UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EYAL YAKOBY, JORDAN DAVIS, NOAH RUBIN, and STUDENTS AGAINST ANTISEMITISM, INC.<br><br>      Plaintiffs,<br><br> v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>      Defendant. | No. 2:23-cv-04789 (MSG) |

**DEFENDANT'S MOTION STAY DISCOVERY**

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO STAY DISCOVERY ............................................. 1
INTRODUCTION ............................................................................................................................. 1
STATEMENT OF RELEVANT FACTS ........................................................................................... 2
ARGUMENT ...................................................................................................................................... 5
    I.     Legal Standard .................................................................................................................. 5
    II.    Penn's Motion to Dismiss May Eliminate Or Narrow Discovery And The Benefits Of A Stay Pending Resolution Outweigh Any Harm ............................................................. 6
    III.   Discovery Will Be Burdensome To Penn ............................................................................. 9
    IV.   The Remaining Factors Weigh in Favor of a Stay of Discovery ........................................ 11
CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*19th St. Baptist Church v. St. Peters Episcopal Church*,
    190 F.R.D. 345 (E.D. Pa. 2000) ...........................................................................................5, 9

*A & B Ingredients, Inc. v. Hartford Fire Insurance Co.*,
    2010 WL 335616 (D.N.J. Jan. 29, 2010) ..................................................................................11

*Anders v. California State University*,
    2021 WL 3021454 (E.D. Cal. July 16, 2021) ..........................................................................10

*Chudasama v. Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997) .................................................................................................5

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) ......................................................................................................5

*Ghaffari v. Wells Fargo Bank NA*,
    621 F. App'x 121 (3d Cir. 2015) ...............................................................................................5

*In re Orthopedic Bone Screw Product Liability Litigation*,
    264 F.3d 344 (3d Cir. 2001) ......................................................................................................5

*Mann v. Brenner*,
    375 F. App'x 232 (3d Cir. 2010) ..........................................................................................6, 8

*McLafferty v. Deutsche Lufthansa A.G.*,
    2008 WL 4612856 (E.D. Pa. Oct. 15, 2008) .......................................................................5, 11

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ..................................................................................................................7

*North American Communications, Inc. v. InfoPrint Solutions Co.*,
    2011 WL 4571727 (W.D. Pa. July 13, 2011) ...........................................................................5

*Pfizer Inc. v. Johnson & Johnson*,
    2018 WL 1071932 (E.D. Pa. Feb. 27, 2018) ....................................................................5, 6, 9

*Weisman v. Mediq, Inc.*,
    1995 WL 273678 (E.D. Pa. May 3, 1995) .................................................................5, 6, 7, 11

## STATUTES, RULES, AND REGULATIONS

20 U.S.C. § 1232g(b)(2)(B) ..........................................................................................................10

Fed. R. Civ. Proc. 26(d)(2)(B) ........................................................................................................4

## NOTICE OF MOTION AND MOTION TO STAY DISCOVERY

The Trustees of the University of Pennsylvania (Penn) move to stay discovery pending resolution of Penn's Motion to Dismiss Plaintiffs' Amended Complaint. *See* ECF No. 41. Penn's Motion to Stay Discovery is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the declaration of David Gringer, dated September 9, 2024, and the exhibits attached thereto.

## INTRODUCTION

Penn seeks a stay of discovery pending resolution of its motion to dismiss. That motion seeks complete dismissal of all claims based both on jurisdictional grounds and fatal pleading deficiencies. As Penn has shown, this dispute is not ripe for judicial review, and Plaintiffs have not stated a single plausible claim against the University. Plaintiffs urge the Court to second-guess some of Penn's disciplinary decisions; ignore the many steps Plaintiffs admit Penn has taken (and continues to take) to eradicate antisemitism; and impose by judicial fiat the regulation of pure political speech on Penn's campus. None of their causes of action states a claim.

A stay is especially appropriate here because Penn's motion seeks a complete dismissal of the Amended Complaint, and if the Court grants it, any discovery would be futile. Even if the Court lets some part of the case survive, Penn's motion to dismiss—which challenges the standing of one plaintiff, seeks to strike certain overbroad requests for injunctive relief, and identifies independent reasons to dismiss each of the claims—is likely to narrow this case significantly. Narrowing the scope of the case before starting the inevitably burdensome, invasive, and contentious discovery process makes good sense. Plaintiffs have already served forty-eight requests for production, seeking documents and communications for nearly a ten-year period and which go far beyond any of their claims. Once the Court rules on Penn's motion, the parties will have a far better sense on the live issues in this case and will have the Court's guidance on what

the proper scope of discovery will be.

The clear advantages of a stay outweigh any harms that may result from a temporary delay. Plaintiffs will not be prejudiced by a brief stay of discovery. All relevant documents are being preserved pursuant to active litigation holds, and there is no real risk of spoliation. Far from being prejudiced, Plaintiffs will likely benefit from the stay as well; absent a stay, Penn intends to promptly seek discovery from all Plaintiffs (including those Plaintiffs that Penn has argued lack standing). A stay will also benefit the Court, as it will spare the Court of having to resolve potentially moot discovery disputes (both the existing ones, previewed below, and others likely to come) once some or all of Plaintiffs' claims are dismissed.

## STATEMENT OF RELEVANT FACTS

This case arises from Penn's ongoing response to combat antisemitism on its campus. To Penn's dismay, the aftermath of the October 7, 2023 terrorist attack and the resulting war in Gaza has caused deep fissures on Penn's campus. While Penn supports a culture of free expression—especially when it comes to political speech about one of the most pressing issues of our time—its campus has been beset by protests and demonstrations where the discourse has turned vitriolic and sometimes hateful. Penn disavows all kinds of hateful speech. So, from the start, Penn has condemned antisemitism and has acted forcefully and promptly to address and root out antisemitism on campus. Penn has made clear that antisemitism and all hateful speech "has no place at Penn." ECF No. 41-8.

Penn has also taken action, including by investigating antisemitic and other hateful incidents, disciplining students who violate Penn's antidiscrimination policies; increasing security at protests, rallies, and demonstrations; instituted a University-wide Action Plan dedicated to combatting antisemitism; and established a Presidential Commission on Countering Hate and Building Community to recommend strategies to both strengthen Penn's sense of community and

support community members who have been impacted by antisemitism and other forms of hate. *See* ECF No. 41-4; 41-21. On September 5, 2024, Penn announced the creation of the Office of Religious and Ethnic Inclusion under Title VI, which will centralize and improve oversight and compliance with Title VI's protections for shared national ancestry, ethnicity, and religious identity. Declaration of David Gringer, dated September 6, 2024 ("Gringer Decl.") ¶ 6; Ex. B. Penn has also revamped its programming during its New Student Orientation for first-year students to emphasize civil dialogue and provide training on countering antisemitism, Islamophobia, hate, and intolerance and emphasize civil dialogue. *See e.g.*, *id.* ¶ 7; Ex. C. Finally, Penn adopted and implemented Temporary Standards and Procedures for Campus Events and Demonstrations and launched a task force to study and update Penn's Open Expression Policies. *Id.* ¶ 8; Ex. D.

Plaintiffs are two Jewish students, one Jewish alumnus, and a group calling itself Students Against Antisemitism (SAA). They claim that Penn's conduct violates Title VI of the 1964 Civil Rights Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Laws (UTPCPL), as well as Plaintiffs' contracts with the University. As Penn showed in its motion to dismiss, Plaintiffs' claims are all jurisdictionally barred (both because their claims are not ripe and because all Plaintiffs lack standing to pursue the injunctive relief they seek), and in all events fail to state a plausible claim. Penn's motion to dismiss the Amended Complaint (ECF No. 41) well illustrates all the infirmities with Plaintiffs' claims. Succinctly, Plaintiffs have not shown any direct discrimination against them and do not plausibly allege that Penn has ever acted with discriminatory animus (*id.* at 19-21); they have not shown that they personally were subjected to severe or pervasive harassment that deprived them of any educational opportunities (*id.* at 22-24); they have not shown that any of Penn's responses were unreasonable, much less clearly unreasonable in light of known circumstances (*id.* at 24-33); they have not alleged any contractual

duty that Penn breached (*id.* at 35-37); and they have not plausibly alleged that Penn's policies are in any way deceptive or that they justifiably relied on any allegedly misleading representations (*id.* at 38-40). Penn's arguments would be fully dispositive of this case. That motion is fully briefed as of May 28, 2024. *See* ECF No. 46.

On August 20, 2024, the parties held a Rule 26(f) conference at which time Penn indicated that it intended to seek a stay of discovery pending its motion to dismiss. Gringer Decl. ¶ 4. The parties were unable to reach agreement regarding Penn's request to stay discovery. *Id.* Penn emailed counsel for Plaintiffs on September 6, 2024 to confirm that Plaintiffs intended to oppose Penn's motion and received no response. *Id.* Plaintiffs served forty-eight requests for production, which seek wide-ranging discovery including broad requests seeking "all documents and communications concerning antidiscrimination, antiharassment, antibias, or DEI training" and "documents concerning Penn's receipt of federal funding."[1] Gringer Decl. ¶ 5; Ex. A. Beyond the breadth of the requests, much of the information that Plaintiffs seek implicates student educational records protected under FERPA. For example, Plaintiffs seeks "all documents and communications concerning Penn students … who have been subject to any disciplinary process or personnel action for violating Penn's policies and procedures[.]" *See e.g.*, Gringer Decl. Ex. A at 11; *see also id.* at 12 (Request No. 16 "[a]ll documents and communications concerning violations or alleged violations of Title VI[.]"). To produce documents responsive to Plaintiffs' requests in compliance with FERPA, Penn would need to undergo a burdensome process to provide students with advance notice and an opportunity to seek protective action prior to disclosure of their educational records. Because the parties have reached an impasse on the

---

[1] Under Federal Rule of Civil Procedure 26(d)(2)(B), Plaintiffs' Requests for Production were deemed served on August 20, 2024.

4

scheduling of discovery during the pendency of the motion to dismiss, Penn brings this motion to stay discovery.

## ARGUMENT

**I.      Legal Standard**

The decision whether to stay discovery while considering a motion to dismiss is within the sound discretion of the Court.  See *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001).  "[A] stay is proper where the likelihood that the motion to dismiss may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *Pfizer Inc. v. Johnson & Johnson*, 2018 WL 1071932, at *1 (E.D. Pa. Feb. 27, 2018) (citations and alterations omitted).  "In other words, the court should carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay." *19th St. Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa. 2000).

In conducting this balancing, the court looks at five competing interests: (1) the plaintiffs' interest in proceeding expeditiously, and the potential prejudice of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the action; and (5) the interest of the public in the pending civil and criminal litigation.  See *McLafferty v. Deutsche Lufthansa A.G.*, 2008 WL 4612856, at *1-2 (E.D. Pa. Oct. 15, 2008).  As the Third Circuit has confirmed, "motions to dismiss filed … under Rule [12(b)(6)] should typically 'be resolved before discovery begins.'" *Ghaffari v. Wells Fargo Bank NA*, 621 F. App'x 121, 124 (3d Cir. 2015) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)).  Courts in this Circuit routinely stay discovery while a fully-dispositive motion to dismiss is pending.  See, e.g., *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 154 (3d Cir. 2010); *Pfizer*, 2018 WL 1071932, at *2; *N. Am. Commc'ns, Inc. v.*

5

*InfoPrint Sols. Co.*, 2011 WL 4571727, at *4 (W.D. Pa. July 13, 2011); *McLafferty*, 2008 WL 4612856, at *2; *Weisman v. Mediq, In*c., 1995 WL 273678, at *2 (E.D. Pa. May 3, 1995).

**II.      Penn's Motion to Dismiss May Eliminate Or Narrow Discovery And The Benefits Of A Stay Pending Resolution Outweigh Any Harm**

A stay pending resolution of Penn's motion to dismiss strongly serves the interest of judicial economy, and it will protect the parties from having to needlessly waste discovery resources.  Because the motion to dismiss is likely to eliminate the need for discovery altogether—or at least eliminate the need for most of the requested discovery, once the case is narrowed—the Court should issue a stay.  The Third Circuit has observed that "[i]n certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile."  *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010). Courts in this district thus routinely find that "a stay is proper where the likelihood that such motion may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay."  *Weisman*, 1995 WL 273678, at *2; *see also Pfizer Inc.*, 2018 WL 1071932, at *1 ("Having reviewed Defendants' Motion to Dismiss, without having formed an opinion on its merits, the Motion does have the potential to dispose of the entire case and eliminate the need for discovery.  In such a case, the balance will generally lean in favor of staying discovery.").

Those principles favor a stay here.  Penn's pending motion to dismiss seeks dismissal of the Complaint in its entirety.  Penn raises jurisdictional defenses, like ripeness, that on their own would be fully dispositive.  All of Plaintiffs' claims are premature because Plaintiffs ask the Court to assess the sufficiency of Penn's ongoing efforts to address antisemitism before those efforts are concluded.  Plaintiffs' claims instead turn on the speculation that Penn's efforts will not be enough—well below what might render the dispute ripe for judicial resolution.  *See* ECF No. 41

6

at 6-9. The Amended Complaint's obvious ripeness issues have become even more pronounced since Penn filed its motion to dismiss. As discussed above, Penn recently created an Office of Religious and Ethnic Inclusion that will oversee compliance with Title VI protections for shared national ancestry, ethnicity, and religious identity. *See supra* at 3. This Court cannot realistically assess the merits of the dispute until the full extent of what Penn has done—and its effectiveness—is clearer. Imposing on Penn the burden of having to litigate the adequacy of its response to antisemitism while that response is ongoing and evolving would impose significant hardship on Penn, yet another reason why the ripeness doctrine dooms this suit. *See* ECF No. 41 at 8.

In addition, because Penn's 12(b)(6) motion focuses simply on the insufficiency of the allegations, "discovery is not needed to rule on such motion." *Weisman*, 1995 WL 273678, at *2; *see also Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (the purpose of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and factfinding"). As shown in Penn's motion, the many steps Penn has taken to combat antisemitism defeat Plaintiffs' claim that Penn has been deliberately indifferent, or that its response has been clearly unreasonable. The facts as pled show that Plaintiffs' claims overwhelmingly concern disagreements with Penn's disciplinary decisions or requests that Penn more forcefully censor political speech, neither of which provides a valid basis for a Title VI claims. *See* ECF No. 41 at 24-33. Plaintiffs concede that Penn has condemned antisemitic conduct, listened to student concerns, offered supportive resources, enforced policies, launched investigations and disciplinary proceedings, and made long-term commitments to addressing antisemitism, including enacting a comprehensive antisemitism Action Plan. *See* AC ¶¶ 102-05, 109, 121, 156, 161-62, 165, 187, 195-96, 198, 237-38. Plaintiffs' direct discrimination claim likewise fails because they never plausibly allege that Penn has acted with discriminatory animus and identify no adverse action taken against them. *See* ECF No. 41 at

19-21. And they do not plausibly allege that they personally have been subjected to a hostile educational environment, relying instead on incidents that allegedly happened to non-parties, without Plaintiffs present, to buff up their otherwise thin claims of harassment. *See* ECF No. 41 at 22-24. Their remaining two claims are likewise likely to be dismissed. As to the contract claim, Plaintiffs identify no relevant contractual undertaking that Penn breached; at most they identify Penn's aspirational language and not affirmative, enforceable duties, and Plaintiffs do not plausibly allege that Penn breached even those. *See* ECF No. 41 at 35-37. As to the Unfair Trade Practices and Consumer Protection Law claim, Plaintiffs have not plausibly alleged that any of Penn's policies or statements were deceptive, much less allege any justifiable reliance, as they must. *See* ECF No. 41 at 38-40. In all, the Amended Complaint makes clear that Plaintiffs seek to leverage the Court's resources to impose their preferred policies on how Penn manages a fraught and complicated topic. None of their causes of action validate the use of judicial resources for those aims.

At a minimum, the Court's resolution of Penn's motion to dismiss will likely narrow the case significantly—which on its own warrants a stay. The Court need not wade into the details of the parties' motion to dismiss argument to see that Plaintiffs' theory of liability is overbroad and that the issues before the Court are far narrower than Plaintiffs (and their discovery requests) suggest. Moreover, the Court may well dismiss at least some of the claims, even if it concludes that fact disputes preclude complete dismissal at this stage. Dismissal of any of those claims will narrow the scope of discovery and render many of Plaintiffs' requests "futile." *Mann*, 375 F. App'x at 239. Separately, the scope of potential discovery will also narrow significantly if the Court agrees with Penn that all Plaintiffs lack standing for injunctive relief for failure to plausibly allege a future certainly impending injury (ECF No. 41 at 9-16), or if the Court agrees with Penn

8

that Plaintiff Students Against Antisemitism, Inc. must be dismissed for lack of associational standing (ECF No. 41 at 17-18).

A stay is especially warranted here because Plaintiffs cannot show any prejudice. At most, they will face a short delay of time while the Court decides Penn's motion to dismiss, but there are no special circumstances that require immediate discovery. *Compare 19th Street Baptist Church*, 190 F.R.D. at 346-47 (rejecting stay where essential witnesses were aged and infirm), *with Pfizer Inc.*, 2018 WL 1071932, at *2 ("[T]he stay does not threaten Pfizer's ability to collect time sensitive evidence."). All relevant information will be preserved pursuant to litigation holds. Plaintiffs chose not to move for a preliminary injunction, and will no doubt pursue claims for damages for time periods where they perceive Penn's challenged conduct continues. Further, Plaintiffs will benefit from a stay, as Penn will seek discovery from Plaintiffs as well. If the Court finds that any Plaintiff lacks standing, no costly discovery with respect to those plaintiffs will be necessary.

**III.    Discovery Will Be Burdensome To Penn**

A stay is particularly warranted here because discovery is likely to be extensive and complex. Plaintiffs have served forty-eight requests for production, seeking documents and communications for nearly a ten year period. Many of the requests seek far-reaching information that go far beyond the claims in the case, if they are allowed to proceed. For example, Plaintiffs seek "[a]ll documents and communications submitted to the U.S. Congress, or any committee, member, or staffer thereof, from December 2023 to the present," without any limitation as to subject matter. Gringer Decl. Ex. A at 11. Other requests are similarly searching and burdensome. *See also id.* (Request No. 12: "All documents and communications concerning antidiscrimination, antiharassment, antibias, or DEI training"); *see also id.* (Request No. 13: "Documents concerning Penn's receipt of federal funding"). The scale and complexity of discovery favors a stay in this

action. *See Pfizer Inc.*, 2018 WL 1071932, at *2 ("[D]iscovery will be a large and costly undertaking in this case. We therefore find that this factor weighs in favor of granting the stay.").

The burden is even more significant here because some of the discovery that Plaintiffs seek is protected under FERPA. For example, one of Plaintiffs' requests seeks "all documents and communications concerning Penn students … who have been subject to any disciplinary process or personnel action for violating Penn's policies and procedures …" Gringer Decl. Ex. A at 11. To produce that information in compliance with FERPA, Penn would be required to provide students with advance notice and an opportunity to seek protective action prior to disclosure of their educational records. 20 U.S.C. § 1232g(b)(2)(B). That process would be burdensome for Penn and the students who would need to review that notice and potentially seek protective action, as well as this Court. Another court has granted a discovery stay pending a motion to dismiss where the "production of the requested information implicate[d] FERPA" and the request were "overbroad and burdensome." *See e.g.*, *Anders v. Cal. State Univ.*, 2021 WL 3021454, at *4 (E.D. Cal. July 16, 2021).

Finally, discovery is likely to involve the production of confidential materials regarding sensitive aspects of Penn's operations. For instance, Plaintiffs seek "[a]ll documents and communications" regarding any Penn student that has been subject "to any disciplinary process or personnel action." Gringer Decl. Ex. A at 11. Beyond the burden associated with the FERPA process for production of those materials, the underlying documents are likely to be highly sensitive, containing personal information about individual disciplinary issues and Penn's handling of those incidents. Documents related to disciplinary actions will reveal sensitive information not only about the individuals involved in the incident, but the identities of students and faculty members sitting on Disciplinary Hearing Panels, which could dissuade members of the

10

Penn community from serving on those important Panels.  *See* Gringer Decl. Ex. E (Charter of the University of Pennsylvania Student Disciplinary System).  The sensitivity of the materials likely to be produced in discovery weighs in favor of a stay.  *See A & B Ingredients, Inc. v. Hartford Fire Ins. Co.*, 2010 WL 335616, at *5 (D.N.J. Jan. 29, 2010) (noting one consideration in deciding on a discovery stay was "will a confidentiality order realistically protect" against disclosure).

Finally, prior to producing any documents, Penn and Plaintiffs will need to negotiate a protective order, which may require the assistance of the Court.  Then, Penn will need to carefully review those materials to make appropriate confidentiality designations, which will be a time consuming process.  The burden associated with those time-consuming steps further supports a stay.

## IV. The Remaining Factors Weigh in Favor of a Stay of Discovery

The remaining factors also weigh in favor of granting a stay.  A stay in discovery promotes the convenience of the court in the management of its cases, and the efficient use of judicial resources.  As noted *supra* at 6-9, a decision on Penn's motion to dismiss may streamline the expensive discovery process, easing burdens on not only both parties, but also the Court to the extent it will not have to devote resources to discovery issues that could potentially be irrelevant to the case subsequent to a decision on the Motion.  *See McLafferty*, 2008 WL 4612856, at *2 ("delaying discovery until the Court can determine whether or not Plaintiffs have pled the facts necessary to proceed with the claim, may help to streamline the expensive discovery process, and, thereby, minimize the burden on … the Court").  Similarly, persons not parties and the public benefit from not having its resources expended by the Courts in handling discovery issues and disputes that may become irrelevant after a decision pending dispositive motion.  *See id.* ("public interest considerations would, in fact, benefit from a stay during which the Court will carefully consider the issues pled in the Complaint"); *see also Weisman*, 1995 WL 273678, at *2.  The

11

burden on Penn from premature discovery will be high, the potential harms of a stay to Plaintiffs is minimal, and no other factors favoring immediate discovery are present, this Court should stay discovery pending resolution of the motions to dismiss.

## CONCLUSION

The Court should grant Defendants' motion for a stay of discovery.

Dated:  September 9, 2024                                          Respectfully submitted,

/s/ David Gringer
David Gringer (*pro hac vice*)
Alan Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8864
Facsimile: (212) 230-8888
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
seth.waxman@wilmerhale.com

Sean V. Burke
Jason Gerard Canavan
Office of General Counsel
University of Pennsylvania
FMC Tower at Cira Centre South
2929 Walnut Street, Suite 400
Philadelphia, PA 19104-5099
Telephone: (215) 746-5200
Facsimile: (215) 746-5222

*Attorneys for Defendant the Trustees of the University of Pennsylvania*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certify that on September 9, 2024, a true and correct copy of the foregoing was filed electronically through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  September 9, 2024                                  Respectfully submitted,

                                                                                  */s/ David Gringer*
                                                                                  David Gringer