## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------- x

EYAL YAKOBY, JORDAN DAVIS, NOAH RUBIN, and STUDENTS AGAINST ANTISEMITISM, INC.

              Plaintiffs,

     v.

THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,

              Defendant.

:   Case No. 2:23-cv-04789 (MSG)
:
:
:
:
:
:
:
:
:
:
:
:
:

------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO STAY DISCOVERY

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT PROCEDURAL HISTORY ............................................................................... 3

ARGUMENT ............................................................................................................................ 4

   I.    LEGAL STANDARD.................................................................................................... 4

   II.   PENN'S MOTION TO DISMISS DOES NOT COMPEL A STAY OF DISCOVERY ... 6

     A.   Penn's Motion to Dismiss Is Not Likely to Dispose of the Case or Eliminate the Need
     for Most Discovery .......................................................................................................... 7

        1.   Penn Will Not Succeed in Challenging Plaintiffs' Standing ..................................... 8

        2.   Penn Will Not Succeed in Challenging the Ripeness of Plaintiffs' Claims .............. 9

        3.   Penn Will Not Succeed on Its Rule 12(b)(6) Motion ............................................. 10

     B.   A Stay of Discovery Would Not Preserve Judicial Resources or Simplify the Issues . 13

   III.   PENN FAILS TO DEMONSTRATE IT WILL SUFFER CLEAR HARDSHIP OR
   INEQUITY ................................................................................................................... 14

   IV.   PLAINTIFFS WOULD BE PREJUDICED IF DISCOVERY WERE STAYED........ 17

   V.   NONPARTIES' AND THE PUBLIC'S INTERESTS FAVOR PROSECUTING THIS
   MATTER WITHOUT DELAY ..................................................................................... 19

CONCLUSION....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*19th St. Baptist Church v. St. Peters Episcopal Church*,
190 F.R.D. 345 (E.D. Pa. 2000)...............................................................................5, 19

*A & B Ingredients, Inc. v. Hartford Fire Ins.*,
2010 WL 335616 (D.N.J. Jan. 29, 2010) .................................................................5, 17

*Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*,
2012 WL 12918261 (D.N.J. July 18, 2012) ......................................................14, 16, 17

*Akishev v. Kapustin*,
23 F. Supp. 3d 440 (D.N.J. 2014) ............................................................................5, 17

*Anders v. California State University*,
2021 WL 3021454 (E.D. Cal. July 16, 2021) ...............................................................17

*Brown v. United States*,
No. 2:17-cv-01551, slip op. (E.D. Pa. July 16, 2018), Dkt. 63...................................14

*Buccigrossi v. Thomas Jefferson Univ.*,
No. 2:21-cv-00221, slip op. (E.D. Pa. Mar. 15, 2021), Dkt. 15.............................5, 14

*Chimenti v. Pa. Dep't of Corr.*,
2017 WL 11672265 (E.D. Pa. Mar. 9, 2017) ...............................................................18

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ....................................................................................13

*City of Philadelphia v. Wells Fargo & Co.*,
2018 WL 424451 (E.D. Pa. Jan. 16, 2018) ..................................................................14

*Clarity Sports Int'l LLC v. Redland Sports*,
400 F. Supp. 3d 161 (M.D. Pa. 2019) .............................................................................5

*Coca-Cola Bottling Co. of Lehigh Valley v. Grol*,
1993 WL 13139559 (E.D. Pa. Mar. 8, 1993)...............................................................4, 6

*Costantino v. City of Atlantic City*,
2015 WL 668161 (D.N.J. Feb. 17, 2015) .....................................................................17

*Creativ Pultrusions, Inc. v. Cooper B-Line, Inc.*,
2019 WL 4058660 (W.D. Pa. Aug. 27, 2019) ................................................................4

*EQT Prod. Co. v. Terra Servs., LLC*,
    2016 WL 7232569 (W.D. Pa. Dec. 14, 2016)..................................................................18, 20

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010)............................................................................................5

*Frankel v. Regents of the Univ. of Cal.*,
    2024 WL 3811250 (C.D. Cal. Aug. 13, 2024).............................................................. *passim*

*Ghaffari v. Wells Fargo Bank NA*,
    621 F. App'x 121 (3d Cir. 2015) ..................................................................................5, 13

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983)...........................................................................................6

*Haque v. Swarthmore Coll.*,
    2016 WL 11812328 (E.D. Pa. June 23, 2016) ...............................................................17

*Henry v. Nat'l Football League*,
    No. 2:20-cv-04165, slip op. (E.D. Pa. Mar. 8, 2021), Dkt. 40.....................................14

*Kestenbaum v. Pres. & Fellows of Harvard Coll.*,
    2024 WL 3658793 (D. Mass. Aug. 6, 2024) ................................................................ *passim*

*Lane v. Wolf*,
    2018 WL 1296573 (M.D. Pa. Mar. 13, 2018)................................................................14

*Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*,
    2013 WL 2253532 (D.N.J. May 22, 2013) ........................................................13, 14, 15, 16

*Mann v. Brenner*,
    375 F. App'x 232 (3d Cir. 2010) ....................................................................................7

*McLafferty v. Deutsche Lufthansa A.G.*,
    2008 WL 4612856 (E.D. Pa. Oct. 15, 2008)...................................................................5

*N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co., LLC*,
    2011 WL 4571727 (W.D. Pa. July 13, 2011) .................................................................5

*Neitzke v. Williams*,
    490 U.S. 319 (1989)........................................................................................................5

*Novartis Pharms. Corp. v. Remedyone*,
    2024 WL 1907394 (D.N.J. Jan. 26, 2024)......................................................................7

*Pacheco-Figueroa v. United States*,
    2023 WL 6436703 (E.D. Pa. Sept. 29, 2023) .................................................................8

*Pedro v. Paragon Sys., Inc.*,
  2022 WL 20678356 (D.V.I. Aug. 22, 2022) .................................................................6

*Pennsylvania v. Navient Corp.*,
  348 F. Supp. 3d 394 (M.D. Pa. 2018) ........................................................................4

*Pfizer Inc. v. Johnson & Johnson*,
  2018 WL 1071932 (E.D. Pa. Feb. 27, 2018) .....................................................5, 15, 18

*In re Plastics Additives Antitrust Litig.*,
  2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ............................................................13

*United States ex rel. Simpson v. Bayer Corp.*,
  2013 WL 12303732 (D.N.J. Jan. 4, 2013) ............................................................15, 16

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
  2024 WL 3596916 (D. Mass. July 30, 2024) .......................................................*passim*

*Tyler v. Diamond State Port Corp.*,
  816 F. App'x 729 (3d Cir. 2020) ...........................................................................6, 18

*Udeen v. Subaru of Am., Inc.*,
  378 F. Supp. 3d 330 (D.N.J. 2019) ...........................................................5, 17, 18, 20

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..............................................................................................19

*Weeks v. Leeward Islands Apothecaries, LLC*,
  2010 WL 2160281 (D.V.I. May 26, 2010) ..................................................................4, 5

*Weisman v. Mediq, Inc.*,
  1995 WL 273678 (E.D. Pa. May 3, 1995) ....................................................................5

*Williams v. Oriental Bank*,
  2022 WL 392544 (D.V.I. Feb. 9, 2022) .......................................................................7

*Winslow v. Sup. Ct. of Penn.*,
  No. 2:19-cv-04632, slip op. (E.D. Pa. Feb. 12, 2020), Dkt. 11 ...............................14

*Woods Servs., Inc. v. Disability Advocs., Inc.*,
  2018 WL 2134016 (E.D. Pa. May 9, 2018) ................................................................14

*Worldcom Techs. v. Intelnet Int'l, Inc.*,
  2002 WL 1971256 (E.D. Pa. Aug. 22, 2002) .......................................................4, 6, 13

*Zow v. Regions Fin. Corp.*,
  595 F. App'x 887 (11th Cir. 2014) ..........................................................................13

**Other Authorities**

Fed. R. Civ. P. 12 ........................................................................................................ *passim*

Fed R. Civ. P. 26 .................................................................................................. 2, 3, 17

Plaintiffs Eyal Yakoby, Jordan Davis, Noah Rubin, and Students Against Antisemitism, Inc. ("SAA") respectfully submit this memorandum of law in opposition to the motion of Defendant The Trustees of the University of Pennsylvania ("Penn") to stay discovery. Dkt. 50.[1]

## PRELIMINARY STATEMENT

"Pending motions do not excuse counsel from proceeding with discovery." Hon. Mitchell S. Goldberg, Pol'ys & Procs. at 5 (last updated June 17, 2024). In this civil rights action arising from the egregiously hostile antisemitic educational environment on its campus, Penn must, but does not and cannot, meet its burden on this motion to show why its motion to stay discovery should be granted.

Though Penn largely bases its motion to dismiss on the likelihood of success of its pending motion to dismiss, Dkt. 41, Penn does not and cannot make any showing, let alone meet the "high bar" of making a "clear and convincing showing," that its motion to dismiss will likely be granted. *Pedro v. Paragon Sys., Inc.*, 2022 WL 20678356, at *3 (D.V.I. Aug. 22, 2022). Recent district court decisions found that Jewish students facing similar circumstances and who raised similar claims against other universities had standing and adequately pleaded their claims, or demonstrated a likelihood of success on the merits sufficient to justify a preliminary injunction against further discrimination. *See Kestenbaum v. Pres. & Fellows of Harvard Coll.*, 2024 WL 3658793 (D. Mass. Aug. 6, 2024) ("*Harvard*") (denying motion to dismiss on standing, ripeness, Title VI deliberate indifference, and state-law claims); *Frankel v. Regents of the Univ. of Cal.*, 2024 WL 3811250 (C.D. Cal. Aug. 13, 2024) ("*UCLA*") (granting preliminary injunction prohibiting school from discriminating against Jewish students and finding students had standing); *see also StandWithUs*

---

[1] Submitted herewith in opposition to the motion is the declaration of Joshua E. Roberts, dated September 23, 2024 ("Roberts Decl."). Capitalized terms not defined herein have the meanings ascribed to them in the Amended Complaint. Dkt. 28 ("Complaint," cited herein as "¶"). "Penn Mem." refers to Penn's Memorandum of Points and Authorities in support of its motion to stay. Dkt. 50. Unless otherwise noted, all emphases are added.

*Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 2024 WL 3596916, at *1-3 (D. Mass. July 30, 2024) ("*M.I.T.*") (ruling individual and organizational plaintiffs had associational standing to seek injunctive relief, individual plaintiffs had standing to seek damages, and Title VI claim was ripe). Because there is no reason to depart from these decisions—especially *Harvard*, which involved nearly identical circumstances and involved the same plaintiff organization—it is unlikely that Penn will prevail, and it certainly has not shown that it will.

Likewise, Penn does not and cannot show that it faces any cognizable hardship in commencing the discovery process, which it has almost entirely refused to do in contravention of applicable rules. Penn attended the required Rule 26(f) conference convened by Plaintiffs' counsel, but objected to it on the ground that it planned to file this motion, and then outright refused to authorize Plaintiffs' counsel to file the required Rule 26(f) Joint Status Report, even though this Court's rules provide that "[o]utstanding motions will not excuse counsel from timely holding this meeting and submitting a Rule 26 plan." Nor can Penn claim any burden, much less a hardship, in having to produce responsive and relevant documents, particularly given that the House of Representatives has already requested, and Penn has gathered and produced, many of those same documents. Moreover, concerns about the potential scope of discovery Penn raises here, even if valid (which they are not), do not justify a stay. The Federal Rules and this Court's rules already provide mechanisms—including "meet-and-confers"—to seek to limit discovery that a party believes is burdensome.

Plaintiffs, meanwhile, would suffer undue prejudice from a stay, including by having their civil rights claims delayed while witnesses move on, memories fade, and evidence is potentially lost. And Penn makes no serious showing that discovery would cause a strain on judicial resources—a claim that rings especially hollow at this early stage, when Penn refuses even to

engage in discussions concerning discovery or a discovery schedule, notwithstanding that the rules require it to do so. The final factors Penn asserts that courts consider on a motion to stay discovery, *see infra* note 5—the public and nonparties' interest—weigh heavily against a stay in this civil rights lawsuit, the outcome of which will affect the public and numerous nonparties. Even under Penn's formulation of the factors, Penn has not met its burden.

### RELEVANT PROCEDURAL HISTORY

Plaintiffs served their first requests for production on July 18, 2024, and simultaneously asked Penn for its availability for a Rule 26(f) conference. Roberts Decl. Ex. 1. The parties held that conference on August 20, during which Penn asserted its intention to move for a stay of discovery and declared the conference, and discovery generally, premature. Roberts Decl. ¶ 3. Penn did not engage substantively with a number of topics required by the Court in its joint report form, though Penn did agree to exchange initial disclosures by September 19. *Id.* ¶ 4. Plaintiffs served their initial disclosures on September 5. Roberts Decl. Ex. 2. Penn served its initial disclosures and its responses and objections to Plaintiffs' first requests for production on September 19. Roberts Decl. Ex. 3. In its response to every request for production, Penn asserts either that it "does not intend to search for responsive, non-privileged documents,"[2] or that it will only engage in said discovery if this motion is denied.[3] *Id.*

Shortly after the conference, on August 24, 2024, Plaintiffs circulated a draft Rule 26(f) Report using the Court's template. Roberts Decl. Ex. 4. Penn did not respond until September 13, stating, "[o]ur position remains that filing the 26(f) Report is premature and we do not consent to filing at this time," while providing "courtesy" edits, such as a request that Penn be granted leave

---

[2] *Id.* at Resp. Nos. 4, 10-11, 14-15, 20, 25-26, 30-32, 34-37, 41-42, 44.

[3] *Id.* at Resp. Nos. 1-3, 5-9, 12-13, 16-19, 21-24, 27-29, 33, 38-40, 43, 45-48.

to submit a proposed discovery schedule only after the Court decides the motion to dismiss. Roberts Decl. Ex. 5; Roberts Decl. Ex. 6. Penn filed this motion on September 9, less than one business day after asking for Plaintiffs' position on the motion and without waiting for Plaintiffs' response. *Compare* Dkt. 50, *with* Roberts Decl. Ex. 7.

## ARGUMENT

### I.    LEGAL STANDARD

"[M]otions to stay discovery are not favored because when discovery is delayed or prolonged[,] it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Worldcom Techs. v. Intelnet Int'l, Inc.*, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002) (citing *Coca-Cola Bottling Co. of Lehigh Valley v. Grol*, 1993 WL 13139559, at *2 (E.D. Pa. Mar. 8, 1993)); *Creativ Pultrusions, Inc. v. Cooper B-Line, Inc.*, 2019 WL 4058660, at *3 (W.D. Pa. Aug. 27, 2019) (same).

Consequently, a stay of discovery "is not[] automatically granted whenever a motion to dismiss is pending." *Weeks v. Leeward Islands Apothecaries, LLC*, 2010 WL 2160281, at *1 (D.V.I. May 26, 2010) (citing *Keystone Coke Co. v. Pasquale*, 1999 WL 46622, at *1 (E.D. Pa. Jan. 7, 1999)); Hon. Mitchell S. Goldberg, Pol'ys & Procs. at 5 ("Pending motions do not excuse counsel from proceeding with discovery."). Indeed, "the timing set forth for discovery-related tasks in the Federal Rules, including for the parties' discovery planning conference under [Rule] 26(f) and the court's issuance of a scheduling order under [Rule] 16(b), indicates that it is expected that the parties in litigation will expeditiously begin discovery soon after a case is filed." *Pennsylvania v. Navient Corp.*, 348 F. Supp. 3d 394, 401 (M.D. Pa. 2018); *see also Coca-Cola*, 1993 WL 13139559, at *2 ("Had the drafters of the Federal Rules [] wanted an automatic stay of discovery pending a motion to dismiss they could have so provided."); *cf. Buccigrossi v. Thomas*

4

*Jefferson Univ.*, No. 2:21-cv-00221, slip op. at 1 (E.D. Pa. Mar. 15, 2021), Dkt. 15 (denying unopposed motion to stay discovery pending resolution of potentially case-dispositive motion to dismiss).

Penn therefore must meet the "heavy burden" of making a "strong showing why discovery should be denied." *Weeks*, 2010 WL 2160281, at *1 (citation omitted); *see also Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (movant "bears the burden"). In making this determination, courts look at: (1) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"; (2) "whether denial of the stay would create 'a clear case of hardship or inequity' for the moving party"; (3) "whether a stay would simplify the issues and the trial of the case"; and (4) "whether discovery is complete and/or a trial date has been set."[4] *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (cleaned up).[5] Penn "must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay

---

[4] Though it is Penn's burden to establish that each factor favors a stay, Penn does not address the fourth factor, no doubt because it does not favor Penn's requested stay. *See, e.g.*, *Udeen v. Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019) ("The fact that the case is at an early stage and no trial date has been set is not a persuasive relevant factor to the Court's decision [denying the stay]. It is almost always the case that a trial date is not set before a motion to dismiss is decided.").

[5] The five-factor test Penn puts forth, Penn Mem. 5, is more commonly employed when a party seeks a stay pending related criminal proceedings, though Plaintiffs prevail under those factors as well. In fact, the case Penn cites for these factors, *McLafferty v. Deutsche Lufthansa A.G.*, 2008 WL 4612856, at *2 (E.D. Pa. Oct. 15, 2008) (Penn Mem. 5), derived them from a case involving a motion to "stay civil discovery until termination of related criminal proceedings." *Id.* at *1-2 (citing *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *5 (E.D. Pa. Nov. 29, 2004)). None of Penn's other authorities analyzes these factors; nearly all of them rely exclusively on a general balancing of benefits and hardships. *E.g.*, *19th St. Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa. 2000) (Penn Mem. 5, 9) (denying request for stay, and explaining that the "court should carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay."); *Pfizer Inc. v. Johnson & Johnson*, 2018 WL 1071932, at *1 (E.D. Pa. Feb. 27, 2018) (Penn Mem. 5-6, 9) (same, but granting stay); *Weisman v. Mediq, Inc.*, 1995 WL 273678, at *2 (E.D. Pa. May 3, 1995) (Penn Mem. 5-7, 11) (granting partial stay under similar test, with no factors); *N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co., LLC*, 2011 WL 4571727, at *4 (W.D. Pa. July 13, 2011) (Penn Mem. 5) (same). Further, many of Penn's authorities do not involve consideration of a stay at all. *E.g.*, *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 154 (3d Cir. 2010) (Penn Mem. 5) (merely noting that lower court entered a stay); *A & B Ingredients, Inc. v. Hartford Fire Ins.*, 2010 WL 335616, at *7 (D.N.J. Jan. 29, 2010) (Penn Mem. 11) (did not involve a request to stay discovery); *Ghaffari v. Wells Fargo Bank NA*, 621 F. App'x 121, 124 (3d Cir. 2015) (Penn Mem. 5) (same); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (Penn Mem. 7) (same).

would work damage on another party." *Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (same).

## II.    PENN'S MOTION TO DISMISS DOES NOT COMPEL A STAY OF DISCOVERY

Penn argues that a stay will "serve[] the interest of judicial economy" because "the motion to dismiss is likely to eliminate the need for discovery altogether—or at least eliminate the need for most of the requested discovery." Penn Mem. 6. In fact, neither of Penn's motions is likely to accomplish what Penn claims. In analyzing whether a requested stay based on a pending motion to dismiss would simplify the issues, courts in this Circuit have taken a "preliminary peek" into the merits of the pending motion, and required defendants to make a "clear and convincing showing" that their motion will likely be granted, which is a "high bar." *Pedro*, 2022 WL 20678356, at *3. As demonstrated by the briefs pending before the Court and recent cases involving similar facts and claims, Penn has not met that standard.

Moreover, Penn's arguments have made clear that there are issues of fact in this action. As Penn admits, its Rule 12(b)(6) motion "focuses simply on the insufficiency of the allegations." Penn Mem. 7. But even if Penn were successful on its motion to dismiss (though it will not be), the "resolution of [such a] pending motion is not necessarily dispositive because the pleadings may be amended to correct the deficiencies.'" *Coca-Cola*, 1993 WL 13139559, at *2-3 (citation omitted). As such, staying discovery here will not serve the interests of judicial economy, and will instead "impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Worldcom Techs.*, 2002 WL 1971256, at *6.

### A. Penn's Motion to Dismiss Is Not Likely to Dispose of the Case or Eliminate the Need for Most Discovery

Penn's motion to dismiss is not likely to result in a decision that will narrow the scope of discovery in any meaningful way, let alone one that will dispose of all claims.[6] The recent holdings in the *Harvard*, *UCLA*, and *M.I.T.* campus antisemitism cases confirm Penn's meritless efforts to dismiss this case (and now, to stay discovery on the same bases).

The *Harvard* plaintiffs, like those here, raised Title VI and contract claims arising out of "an outburst of antisemitic behaviors" on campus, where Jewish students were harassed, intimidated, bullied, and even assaulted in classrooms, on online platforms, and through a never-ending calendar of demonstrations featuring antisemitic language and harassing intent. 2024 WL 3658793, at *1-2; *see* ¶¶ 277-99. As here, the "ongoing tumult [at Harvard] caused many Jewish and Israeli students to fear for their personal safety and hindered their ability to complete their academic studies." *Harvard*, 2024 WL 3658793, at *2. In *M.I.T.*, 2024 WL 3596916, at *1-3, two Jewish students and an organizational plaintiff brought a putative class action for Title VI violations, among other claims, alleging that M.I.T. had "abandoned" its Jewish students to continuous antisemitic demonstrations, vandalism, disruption, and harassment, likely to continue to cause plaintiffs future injury. In *UCLA*, 2024 WL 3811250, at *3, 8-9, Jewish students brought

---

[6] Penn cites *Mann v. Brenner*, 375 F. App'x 232 (3d Cir. 2010) (Penn Mem. 6), to argue that "[i]n certain circumstances[,] it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile." But Penn's reliance on *Mann* is misplaced, as in *Mann*, plaintiff's Due Process claim was barred by collateral estoppel, and he failed to state any other claim despite being afforded multiple opportunities to amend his complaint. *Id.* at 237-39. The Third Circuit found no abuse of discretion in staying discovery pending the motion to dismiss where the baseless lawsuit justified the stay—it was clear that discovery would have been futile. *Id.* at 239. The court did not hold that there is a presumptive bar to discovery during the pendency of a motion to dismiss. In fact, post-*Mann* decisions rejecting discovery stay requests correctly recognize that even under *Mann*, the movant still "must make out a clear case of hardship or inequity . . . if there is even a fair possibility that the stay will work damage to someone else." *Williams v. Oriental Bank*, 2022 WL 392544, at *1 (D.V.I. Feb. 9, 2022) (citation omitted); *see Novartis Pharms. Corp. v. Remedyone*, 2024 WL 1907394, at *2 (D.N.J. Jan. 26, 2024) ("[A]lthough a stay pending decision on a dispositive motion may be appropriate in certain circumstances . . . , the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay." (cleaned up)).

Title VI and constitutional claims, among others, and the court granted a preliminary injunction prohibiting UCLA from "knowingly allowing or facilitating the exclusion of" Jewish students from campus activities and areas.

### 1. Penn Will Not Succeed in Challenging Plaintiffs' Standing

Like each of the *Harvard*, *UCLA*, and *M.I.T.* defendant universities', Penn's standing arguments will fail, and are therefore unlikely to result in narrowing most discovery.[7] In *Harvard*, 2024 WL 3658793, *4, Judge Stearns rejected the same jurisdictional arguments advanced by Penn, finding that SAA—the same organizational plaintiff here—had standing to seek prospective relief, and that the individual alumnus-plaintiff had standing to seek damages. In *M.I.T.*, 2024 WL 3596916, at *3, which involved similar claims and a mixture of organizational and individual plaintiffs, Judge Stearns likewise found that plaintiffs had standing. In both cases, plaintiffs established a sufficient threat of ongoing or recurring injury, in light of antisemitism they had experienced over the course of the 2023-2024 academic year.[8] In *UCLA*, 2024 WL 3811250, at *4-6, Judge Scarsi granted a preliminary injunction, and found Jewish student-plaintiffs had standing because they alleged an imminent likelihood of future injury based on past antisemitic

---

[7] As it did in its motion to dismiss, Penn again uses its control of documents as both a sword and a shield—it continues to attempt to deny Plaintiffs discovery while selectively inserting outside-the-pleadings documents into the record. *See* Penn Mem. 2-3, 6-9; Dkt. 50-1, Gringer Decl. Exs. B-E. But Penn's inability to stick to the pleadings, and in particular, its use of untested documents and made-for-litigation announcements to support its standing and ripeness arguments, only goes to show that dismissal is inappropriate and that this case should move to discovery. *See Harvard*, 2024 WL 3658793, at *4 ("The only genuinely disputed facts that weigh on SAA's ability to seek prospective injunctive relief are whether Harvard's actions to date have been adequate and whether they will likely be effective going forward. This is the core merits dispute in this case. The court accordingly declines to rule on the issue at this formative stage of the litigation."); *Pacheco-Figueroa v. United States*, 2023 WL 6436703, at *4-6 (E.D. Pa. Sept. 29, 2023) (denying Rule 12(b)(1) motion and granting "full discovery" where "jurisdictional discovery" and "merits discovery" were intertwined and "case likely will come down to factual issues").

[8] *Harvard*, 2024 WL 3658793, at *1-3 (student groups "regularly demonstrated on campus," and "[p]rotestors marched through campus, staged classroom walkouts, and rallied in common areas of campus"—often chanting antisemitic slogans—ending the academic year in an encampment featuring antisemitic abuses); *M.I.T.*, 2024 WL 3596916, at *1-2 (student groups demonstrated throughout the year, "walking out of classes, organizing 'die-ins,' and protesting in . . . a 'major thoroughfare' on" campus, culminating in an antisemitic encampment across from a campus Jewish organization).

events on campus, including their inabilities to traverse the campus quad and access areas of campus at protest checkpoints due to anti-Jewish discrimination, where "[i]t remain[ed] to be seen how effective UCLA's policy changes will be."

Plaintiffs here have similarly demonstrated standing by sufficiently alleging past and ongoing injury fully traceable to Penn's deliberate indifference, including facing repeated onslaughts of harassment and denial of access to facilities at Penn from other students and faculty, with Penn failing to intervene. *See, e.g.*, ¶¶ 236, 243, 245; Dkt. 42 at 29-32 (harassment ongoing throughout academic year, and continued despite repeated pleas that Penn's administration act to remedy Plaintiffs' suffering).[9] Though Penn claims that it "has condemned antisemitism and has acted forcefully and promptly to address and root out antisemitism on campus," Penn Mem. 2, Plaintiffs, who have returned to Penn's campus for the fall semester, have continued, and will continue, to suffer harm as long as Penn persists in its insufficient response to antisemitism. For example, on September 12, Penn Against the Occupation vandalized a campus statue of Benjamin Franklin by splattering it with red paint as a self-described "visual reminder" of "martyrs and the university's complicity in genocide" by Israel, and promising "THE STUDENTS WILL NOT STOP." Roberts Decl. Ex. 8.

### 2. Penn Will Not Succeed in Challenging the Ripeness of Plaintiffs' Claims

Again, as in *Harvard* and *M.I.T.*, Penn will not obtain a decision finding Plaintiffs' claims are not ripe.[10] In both cases, Judge Stearns dismissed the schools' contentions that their purported responses to antisemitic discrimination and harassment were "underway" and "will likely be

---

[9] Penn's announcement of a new "Office of Religious and Ethnic Inclusion," Penn Mem. 7, does not affect standing. *See* Dkt. 53.

[10] *UCLA*, 2024 WL 3811250, at *5-8, did not explicitly address ripeness, though the court's grant of a preliminary injunction implies that it found the case ripe for relief.

effective going forward," finding that damages claims were ripe and declining to dismiss claims for prospective relief. *Harvard*, 2024 WL 3658793, at *3-4; *see M.I.T.*, 2024 WL 3596916, at *4. Penn's ripeness arguments on injunctive relief, including the efficacy of any new offices or groups it may create, *see, e.g.*, Dkt. 41 at 7; Penn Mem. 7; Dkt. 42 at 38; Dkt. 53, are "intertwined" with the "core merits dispute in this case," and thus cannot be grounds for dismissal at this stage, *Harvard*, 2024 WL 3658793, at *3-4 (rejecting argument that case is not ripe because "efforts to combat antisemitism on campus are 'still underway'" (citation omitted)); *M.I.T.*, 2024 WL 3596916, at *4 (rejecting argument that defendant "should not have to 'defend the adequacy of its response [to on-campus antisemitism] while that response [is] underway'" (citation omitted)); *see also UCLA*, 2024 WL 3811250, at *4-5 (rejecting standing challenge where "remedial actions" including "the creation of a new Office of Campus safety" were not yet shown to be effective).

### 3.  Penn Will Not Succeed on Its Rule 12(b)(6) Motion

Penn's Rule 12(b)(6) arguments are also unlikely to narrow discovery and cannot justify a stay here. In analyzing Title VI deliberate indifference claims, *Harvard* held that plaintiffs adequately alleged Harvard "failed its Jewish students" and that Harvard's response to campus harassment was "so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances." *Harvard*, 2024 WL 3658793, at *6-7. Judge Stearns also declined to "reward Harvard for virtuous public declarations" that "proved hollow when it came to taking disciplinary measures against offending students and faculty." *Id.* at *6. Judge Stearns denied Harvard's Rule 12(b)(6) motion except as to the plaintiffs' direct discrimination theory, though he found that similar allegations regarding Harvard's failure to "evenhandedly administer its policies" supported plaintiffs' breach of the implied covenant claim. *Id.* at *3-9.

Although the *M.I.T.* court found that the plaintiffs did not adequately plead deliberate indifference, Penn's response to the antisemitism that has plagued its campus for over a year is at

least as egregious as Harvard's, and is a far cry from what the court characterized as M.I.T.'s "evolving and progressively punitive response largely track[ing] . . . the hostility that demonstrators directed at Jewish and Israeli students." *M.I.T.*, 2024 WL 3596916, at \*5. While Judge Stearns held that M.I.T. acted to contain the escalating issues on its campus, beginning with suspending students, then suspending one of the worst-offending student groups, and, once the encampment began, "immediately warn[ing] students of impending disciplinary action" and, importantly, ultimately "suspend[ing] and arrest[ing] trespassing students," *id.*, Penn, like Harvard, failed to exhibit a "consistent sense of purpose in returning civil order and discourse to its campus," as Title VI requires, *Harvard*, 2024 WL 3658793, at \*7. Indeed, Penn has taken *no* known disciplinary action in response to the unrest on its campus. *See* Dkt. 42 at 13-15, 18-20. The Complaint here amply alleges an ongoing severe and pervasive hostile education environment to which Penn has reacted, at best, in an "indecisive, vacillating, and . . . internally contradictory" manner, leading to a full year of sustained harassment, verbal abuse, and violence for Penn's Jewish and Israeli students. *Harvard*, 2024 WL 3658793, at \*6. As in *Harvard*, it is sufficient for Plaintiffs' deliberate indifference claim that Penn "fail[ed] to address . . . [the] eruption of antisemitism" on its campus, and "in many instances, [failed to] respond at all." *Id.* at \*6.[11]

---

[11] The same type of allegations that led Judge Stearns to find Harvard's deliberate indifference also establish Penn's deliberate indifference here. *Compare, e.g., Harvard*, 2024 WL 3658793, at \*6 (Harvard police officers "fail[ed] to react" when a "Jewish student was openly 'charged' and 'pushed'" at demonstration), *with* ¶ 8 ("Penn and its campus police . . . did nothing" while mob of protestors defaced university buildings); *compare* 2024 WL 3658793, at \*6 (Harvard said encampment violated policies, but allowed it to continue for several weeks rather than ending it), *with* Dkts. 42 at 30-31, 42-4 at 2 (Penn states that encampment "violates the University's facilities policies," but closes the library rather than ending it); *compare* 2024 WL 3658793, at \*6 (dean's email instructs that Caspersen lounge is for "personal or small group study or conversation" only, but he attends a "vigil for martyrs" in that lounge the very next day and took no action to stop it), *with* ¶¶ 203-08 (demonstrators took over a building in violation of Penn rules, and though Penn said they would be arrested, permitted them to remain for the remainder of the semester); *compare* 2024 WL 3658793, at \*1 (Harvard permitted a student who assaulted a Jewish student at on-campus demonstration to retain his position as a teaching fellow), *with* ¶¶ 191, 210 (student arrested for "criminally target[ing] Jewish students for violence," yet "remains a student" and Penn "has yet to discipline her"); *compare* 2024 WL 3658793, at \*6 (Harvard's short-term suspension of student group "proved to be in name alone, as [that group] spearheaded the creation of the [policy-violating] encampment"), *with* ¶ 203 (Penn states that those who orchestrated an antisemitic light show would

Penn's arguments that Plaintiffs merely "disagree[]" with "disciplinary decisions" or request censorship of "political speech,"[12] are similarly baseless, and, despite Penn's contentions, Plaintiffs have not "concede[d]" that any of Penn's purported reactions to campus antisemitism have been sincere or effective.[13] Penn Mem. 7. Rather, as in *Harvard*, 2024 WL 3658793, at *6, Penn's "handful of steps" and "virtuous public declarations" cannot not overcome that "the facts as pled show that [Penn] failed its Jewish students." *See* Dkt. 42 at 13-22.

With respect to their breach of contract claim, Plaintiffs here have also sufficiently alleged that Penn breached "mandatory obligations in [its] policies" designed to protect its Jewish students. Dkt. 42 at 24-25; *see Harvard*, 2024 WL 3658793, at *8. Finally, Plaintiffs also state Unfair Trade Practices and Consumer Protection Law claims, under which the misleading character of the challenged Penn policies are "best sorted out through discovery." Dkt. 42 at 25 (citing *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 401 (E.D. Pa. 2021)).

---

be held responsible, but student group that claimed responsibility remained "active and continue[d] to break [Penn's] rules with impunity").

[12] Penn's continued framing of the disruptive, violent, Penn rules- and law-violating protest activity that pervaded the last academic year—including weeks-long hostile takeovers of campus common areas—as "political speech about one of the most pressing issues of our time," Penn Mem. 2, 7, reveals its deliberate indifference, illustrating that despite its "trust us; we're fixing it" lip service, Penn does not truly believe there is a problem to fix at all. Dkt. 42 at 3. Penn's suggestion that the First Amendment ties its hands will not succeed. *See id.* at 22 n.20; *Harvard*, 2024 WL 3658793, at *6 (finding Harvard's First Amendment justification for failing to respond to Title VI concerns "dubious" and reserving decision until the record is more developed). Penn also cannot label the antisemitic harassment at the countless demonstrations and other incidents alleged in the Complaint as merely "political," even if the attacks on Jews are sometimes thinly masked by coded language. Dkt. 42 at 12 n.9; *see also Harvard*, 2024 WL 3658793, at *2 n.4, *7 (recognizing that references to "Zionists" rather than Jews can properly underly allegations of antisemitism); *UCLA*, 2024 WL 3811250, at *2 (issuing preliminary injunction against school which unlawfully allowed exclusion of "people who supported the existence of the state of Israel").

[13] Penn misleadingly cites the Complaint for the proposition that "Plaintiffs concede that Penn has condemned antisemitic conduct, listened to student concerns, offered supportive resources, enforced policies, launched investigations and disciplinary proceedings, and made long-term commitments to addressing antisemitism, including enacting a comprehensive antisemitism Action Plan." Penn Mem. 7. But each of the cited paragraphs shows that these purported measures—which were not "supportive" or "enforced" and cannot yet have been considered "long-term"— only highlight Penn's actual knowledge of its pervasive antisemitism problem and deliberate indifference thereto. *See, e.g.*, Dkt. 42 at 16-18.

Because Plaintiffs are at least equally likely to prevail on the critical issues on the motion to dismiss as were the *Harvard* plaintiffs, a stay of discovery is unwarranted.

### B.    A Stay of Discovery Would Not Preserve Judicial Resources or Simplify the Issues

Penn argues that a "stay in discovery promotes the convenience of the court in the management of its cases, and the efficient use of judicial resources," Penn Mem. 11, and "serves the interest of judicial economy," because, it claims, its "motion to dismiss is likely to eliminate the need for discovery altogether," *id.* at 6. But its generic argument ignores extensive precedent that "[m]otions to stay discovery are not favored," in part because they can often "create case management problems." *Worldcom Techs.*, 2002 WL 1971256, at *6 (citation omitted); *see also Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 2013 WL 2253532, at *2 (D.N.J. May 22, 2013) ("[C]ourts generally do not favor granting motions to stay discovery 'because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" (citation omitted)).[14] These problems include hindering a court's responsibility to keep its "docket moving to provide litigants with a timely and effective resolution of their claims." *In re Plastics*, 2004 WL 2743591, at *7.

That a motion to dismiss might result in complete dismissal, if granted, does not establish that failing to stay the case would waste judicial resources. By Penn's logic, courts would grant

---

[14] Penn mischaracterizes the law in arguing that Rule 12(b)(6) motions should "typically 'be resolved before discovery begins.'" Penn Mem. 5 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), and *Ghaffari v. Wells Fargo Bank NA*, 621 F. App'x 121 (3d Cir. 2015)). Those cases considered a court's charge to rule on motions to dismiss promptly; they did not hold that defendants get to abstain from discovery solely because they filed a dispositive motion. As the Eleventh Circuit clarified, *Chudasama* "only found an abuse of discretion [in compelling discovery] because the district court ordered the parties to engage in substantive discovery despite failing to rule on the defendants' motion to dismiss for over eighteen months." *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th Cir. 2014). And in *Ghaffari*, the Third Circuit held it was not an abuse of discretion to rule on the Rule 12(b)(6) motion before discovery had been *completed*. *Ghaffari*, 621 F. App'x at 124.

motions to stay discovery whenever a pending motion to dismiss could dispose of the case—as there are no unique circumstances here that merit treating this action differently from any other case in the same posture.[15] That is not the law. *See, e.g.*, *Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*, 2012 WL 12918261, at *2 (D.N.J. July 18, 2012) (denying motion to stay discovery even where defendant sought complete dismissal for lack of standing); *Buccigrossi*, No. 2:21-cv-00221, slip op. at 1 (denying unopposed stay request based on potentially case-dispositive motion to dismiss).

Penn's argument that the Court "will [] have to devote resources to discovery issues that could potentially be irrelevant," Penn Mem. 11, is similarly unavailing. There are no present discovery disputes aside from this motion to stay. In fact, this motion—which Penn filed without making any good-faith attempt to negotiate with Plaintiffs on a narrower subset of discovery—is the true waste of judicial resources.

## III.    PENN FAILS TO DEMONSTRATE IT WILL SUFFER CLEAR HARDSHIP OR INEQUITY

Penn did not, because it cannot credibly show that, without a stay of discovery, it will suffer a "clear case of hardship or inequity." *Maher Terminals*, 2013 WL 2253532, at *3 (denying stay where defendants "d[id] not explain with any specificity why the instant matter is different than any other case in which a dispositive motion has been filed early," as the "burden rests squarely

---

[15] Though Penn claims that "Courts in this Circuit routinely stay discovery while a fully dispositive motion to dismiss is pending," Penn Mem. 5, many courts actually do not rule on motions to stay discovery at all, and instead deny them as moot after first ruling on the underlying motions to dismiss. *E.g.*, *Winslow v. Sup. Ct. of Penn.*, No. 2:19-cv-04632, slip op. at 7 (E.D. Pa. Feb. 12, 2020) (Goldberg, J.), Dkt. 11; *Brown v. United States*, No. 2:17-cv-01551, slip op. at 5 n.7 (E.D. Pa. July 16, 2018) (Goldberg, J.), Dkt. 63; *Henry v. Nat'l Football League*, No. 2:20-cv-04165, slip op. at 1 (E.D. Pa. Mar. 8, 2021), Dkt. 40; *Woods Servs., Inc. v. Disability Advocs., Inc.*, 2018 WL 2134016, at *1 n.2, *6 (E.D. Pa. May 9, 2018); *Lane v. Wolf*, 2018 WL 1296573, at *6-7 (M.D. Pa. Mar. 13, 2018); *City of Philadelphia v. Wells Fargo & Co.*, 2018 WL 424451, at *7 (E.D. Pa. Jan. 16, 2018).

on defendants to make such a showing because a stay of discovery is 'not preferred'" (citations omitted)). This failure is enough to deny Penn's request.

Penn first argues that the "expensive" nature of the discovery process and the "scale and complexity of discovery" merits a stay because it will "burden" Penn, Penn Mem. 9-11, but offers no explanation why discovery here will be more expensive or complex than in any other case. *See Maher Terminals*, 2013 WL 2253532, at *3 (defendants failed to show with any specificity that discovery would be "'unduly' burdensome," compared to "any other case" in which "a dispositive motion is filed in the early stages of the litigation"). Penn disingenuously relies on *Pfizer*, 2018 WL 1071932, at *2, in arguing that the scope of discovery warrants a stay here, Penn Mem. 9-10. There, plaintiffs intended to take over *110 depositions*, and had requested discovery not only from defendants, but various *third parties*, including insurers, group purchasing organizations, hospitals, and clinics. *Pfizer*, 2018 WL 1071932, at *2. As an antitrust case, the scope of discovery was expected to be "enormous." *Id.* Plaintiffs here, on the other hand, have served one set of document requests seeking relevant documents in Penn's possession. *See* Dkt. 50-2. And while Penn claims that certain requests are "far-reaching," and that any burden arising out of responding to them warrants a stay, Penn Mem. 9-10, the parties have yet to confer on potentially narrowing certain requests or efficiently searching using search terms to locate responsive documents. Penn Mem. 9-10.

Penn's expense and complexity arguments are especially unconvincing considering that Penn is already compiling materials Plaintiffs seek in response to congressional document requests. *See United States ex rel. Simpson v. Bayer Corp.*, 2013 WL 12303732, at *1, *2 n.2 (D.N.J. Jan. 4, 2013) (defendants failed to show "good cause" for a stay based on a pending motion to dismiss and complaints about the scope of proposed discovery, where "most of the discovery

likely to occur in this case has already been completed" in another proceeding).[16] That Penn must comply with ongoing congressional discovery requests relating to the same issues relevant to this case further demonstrates that Penn will suffer no clear hardship sufficient to stay discovery.

Penn next contends that "much of the information that Plaintiffs seek implicates student educational records protected under FERPA" and that "Penn would need to undergo a burdensome process to provide students with advance notice and an opportunity to seek protective action prior to disclosure of their educational records." Penn Mem. 4, 10. But arguments concerning the scope of discovery cannot satisfy Penn's burden to show clear hardship on a motion to stay. *See Maher Terminals*, 2013 WL 2253532, at *3 n.1 ("defendants' concern[s] regarding . . . burdensome discovery[] are misplaced" on motion to stay discovery, because courts have various tools to manage the scope of discovery under the Federal Rules); *Bayer Corp.*, 2013 WL 12303732, at *1-3 (rejecting defendants' scope-of-discovery arguments and rejecting request to stay discovery because scope of discovery should be resolved via the parties' meet and confer); *Adriana Castro, M.D., P.A.*, 2012 WL 12918261, at *2 n.2 ("Denying a stay of discovery does not prevent Sanofi

---

[16] The U.S. House of Representatives Committee on Education and the Workforce ("Education Committee") is investigating Penn "for its response to antisemitism occurring on its campus and its failure to protect Jewish students attending the university." Roberts Decl. Ex. 9 ("Educ. Comm. Req."). On January 24, 2024, the Education Committee issued document requests to Penn that substantially overlap with those propounded by Plaintiffs, by, for example, requesting materials relating to antisemitic incidents (Educ. Comm. Req. No. 1; Dkt. 50-2 ("RFP") No. 2), relevant policies and governance (Educ. Comm. Req. Nos. 2-3, 15; RFP Nos. 5-6, 18-19), discipline (Educ. Comm. Req. Nos. 4-5, 7; RFP No. 9), Penn's Board of Trustees (Educ. Comm. Req. Nos. 10-11; RFP No. 40), the Palestine Writes Literature Festival (Educ. Comm. Req. Nos. 12, 16; RFP No. 34), Penn's Action Plan to Combat Antisemitism (Educ. Comm. Req. No. 13; RFP No. 21), the University Task Force on Antisemitism (Educ. Comm. Req. No. 14; RFP No. 22), Penn Against the Occupation (Educ. Comm. Req. No. 16; RFP No. 28), foreign funding (Educ. Comm. Req. Nos. 20-23; RFP No. 14), and Jewish enrollment (Educ. Comm. Req. Nos. 24-25; RFP No. 44). The U.S. House of Representatives Committee on Ways and Means ("Ways and Means Committee") is also investigating whether Penn is "adequately protecting Jewish students from harassment and acts of violence in compliance with antidiscrimination laws." Roberts Decl. Ex. 10 at 5. The Ways and Means Committee has requested materials and information from Penn in connection with this investigation, including that Penn, among other things, identify relevant policies and describe its efforts to "protect[] [Penn's] Jewish students on campus to comply with antidiscrimination laws." *Id.* at 6; *see* RFP Nos. 6, 18 (requesting materials relating to policies). On March 21, 2024, the Ways and Means Committee requested responses to additional questions relating to, among other things, disciplinary action taken by Penn in connection with antisemitism, foreign funding, and a specific faculty member. *See* Roberts Decl. Ex. 11 at 4-5; *see* RFP Nos. 9 (discipline), 14 (foreign funding), 26 (requests regarding same faculty member).

from seeking protection from overbroad and unduly burdensome discovery requests under [Rule] 26(b).").[17] If this Court were to accept Penn's generic FERPA concerns, a stay would be warranted in every case that potentially implicated FERPA or any case potentially necessitating redactions; Congress did not provide for such a stay. *See Haque v. Swarthmore Coll.*, 2016 WL 11812328, at *1 n.1 (E.D. Pa. June 23, 2016) ("FERPA [] does not create an evidentiary privilege and materials covered by FERPA are therefore discoverable in the context of a civil action." (citations omitted)).[18]

## IV.      PLAINTIFFS WOULD BE PREJUDICED IF DISCOVERY WERE STAYED

Penn concludes that Plaintiffs will not suffer any prejudice if the Court grants its motion to stay, and, if anything, that a stay would *benefit* Plaintiffs. Penn Mem. 11-12. But Plaintiffs' right to pursue their case expeditiously far outweighs any supposed hardship on Penn. *See, e.g.*, *Costantino v. City of Atlantic City*, 2015 WL 668161, at *4 (D.N.J. Feb. 17, 2015) (a delay in plaintiffs' efforts to diligently proceed with their claims substantially prejudices plaintiffs); *Udeen*, 378 F. Supp. 3d at 332-33 (denying stay because plaintiffs' risk of prejudice "is especially true [where] plaintiffs['] claim . . . is [based on] a safety hazard"); *Akishev*, 23 F. Supp. 3d at 447

---

[17] Penn also claims that it will be "burden[ed]" by the need to "negotiate" and comply with a "protective order" in this action. Penn Mem. 11. If Penn has concerns regarding its FERPA or any other confidentiality obligations, it can move for a protective order like any other litigant. But the mere potential need for a protective order is not so "unduly burdensome" to warrant a stay of discovery. *See Adriana Castro, M.D., P.A.*, 2012 WL 12918261, at *2 n.2 (rejecting defendant's argument that the "broad discovery requests . . . seek[ing] virtually every document in [its] possession relating to pediatric vaccines" constitutes good cause for staying discovery; instead defendant is free to seek protection under Rule 26).

[18] Penn's cited cases do not provide any support. *Anders v. California State University*, 2021 WL 3021454, at *4-5 (E.D. Cal. July 16, 2021) (Penn Mem. 10), a California case that has never been cited by a court within this Circuit, issued its holding under a two-part test not utilized in this District, and only discussed FERPA in dicta after already determining a stay was warranted. And contrary to Penn's assertion, *A & B Ingredients*, 2010 WL 335616, at *5, did not say that "one consideration in deciding on a discovery stay was 'will a confidentiality order realistically protect' against disclosure," Penn Mem. 11. Instead, the court simply explained that the party seeking a confidentiality order urged the court to adopt a California court's reasoning, under which that court considered whether a confidentiality order would "realistically protect the policyholder from disclosing prejudicial information in response to the discovery." 2010 WL 335616, at *5. However, the court refused to do so, and instead ordered discovery to proceed pursuant to a confidentiality order. *Id.* at *7.

(denying motion to stay where plaintiffs had to continue to pay their high-interest loans on the disputed vehicles and thus would be unduly prejudiced by delay); *Chimenti v. Pa. Dep't of Corr.*, 2017 WL 11672265, at *1 n.1 (E.D. Pa. Mar. 9, 2017) (denying motion to stay discovery where plaintiffs were at risk of suffering physical harm during the delay). Indeed, a stay would only prolong Plaintiffs' exposure to the rampant antisemitism they have and continue to endure on Penn's campus, as they would be prohibited from gathering the evidence necessary to seek relief. In just the few weeks since the new semester at Penn started, for example, Jewish students have had to contend with student and faculty members' participation in rallies that featured chants supporting Hamas, and a supposedly deregistered student group vandalized a statue on campus in aid of their antisemitic goals. *See supra* § II.A.1.

Penn's assertion that "no special circumstances [] require immediate discovery" because the "relevant information will be preserved," Penn Mem. 9,[19] ignores the reality of obtaining discovery. Students, faculty, administrators, and staff with relevant information may move on from Penn, lose documents, move away from the jurisdiction, or forget with the passage of time, making it more difficult for Plaintiffs to prove their case if discovery were delayed. *See Udeen*, 378 F. Supp. 3d at 332-33 (no stay where, because "the extensive briefing on [pending] motion and the expected time it will take for the motion to be decided, the case will be in suspense for months" and "the longer the case languishes the greater chance exists that relevant evidence may be lost or destroyed"); *EQT Prod. Co. v. Terra Servs., LLC*, 2016 WL 7232569, at *3 (W.D. Pa. Dec. 14, 2016) (denying stay where party had "lost witnesses who [had been] employed by Defendant [and] the loss of additional witnesses [during a stay] would result in undue prejudice to plaintiff"); *Tyler*,

---

[19] Unlike here, in *Pfizer*, 2018 WL 1071932, at *2 (Penn Mem. 9), there was no time-sensitive concern, nor any other concern, pertaining to plaintiff's potential prejudice. Yet the court expressly "invite[d] Pfizer to seek the Court's permission to lift the stay so that it may collect such evidence." *Id.* at *2 n.2.

816 F. App'x at 731 (affirming denial of stay where stay would have caused undue prejudice in part because "key witnesses were no longer employed by" movant and witnesses' memories fade).

Penn also asserts that it its requested stay will be short, Penn Mem. 9, but offers no support for its speculation. A stay of uncertain duration, as sought here, increases the likelihood that Plaintiffs will be prejudiced. *Cf. 19th St. Baptist*, 190 F.R.D. at 349 (denying stay, noting "even if defendants' jurisdictional challenges succeed, a decision in their favor will not come for some time given the complex issues the court must address and likely appeal that would follow if a dismissal is granted."). If Penn prevails on its request for a stay, Plaintiffs will be forced to wait to prosecute their claims while continuing to be subject to Penn's ongoing hostile environment.

## V.     NONPARTIES' AND THE PUBLIC'S INTERESTS FAVOR PROSECUTING THIS MATTER WITHOUT DELAY

The fourth and fifth factors—which only apply if the Court were to use Penn's five-factor test for when a party seeks a stay pending related criminal proceedings, *see supra* note 5—do not favor staying discovery. Penn argues, with no factual basis, that "persons not parties and the public benefit from not having its resources expended by the Courts in handling discovery issues and disputes that may become irrelevant after a decision pending dispositive motion." Penn Mem. 11.

But litigating the civil rights violations here will benefit other Jewish community members at Penn and all victims of protected class-based discrimination and harassment at Penn and other colleges, including SAA members. These community members' interests are best served by allowing this case to proceed under the timeline contemplated by the Federal Rules. *See 19th St. Baptist*, 190 F.R.D. at 349 n.14 (in race discrimination case, denying motion to stay in part because "public interest factor also counsel[ed] in favor" of permitting discovery where court has "institutional responsibility for safeguarding" race-based civil rights); *cf. Warth v. Seldin*, 422 U.S. 490, 515 (1975) (associational standing is proper where relief sought "will inure to the benefit of

those members of the association actually injured."). Moving forward expeditiously with this litigation also benefits the general public's interest, as the issue of antisemitism at American universities has become a widely publicized topic in the news and has triggered multiple congressional investigations. *See* Roberts Decl. Exs. 9-11.[20]

Nonparties who may be witnesses here—including many whose identities and relevance will be revealed only through the discovery process—will also benefit from having their relevance and identities determined before memories fade and documents are lost. *See, e.g.*, *Udeen*, 378 F. Supp. 3d at 333 ("the longer the case languishes the greater chance exists that relevant evidence may be lost or destroyed," including "the inability of witnesses to recall specific facts" or "witnesses become unavailable" (citations omitted)); *EQT Prod. Co.*, 2016 WL 7232569, at *3 (finding prejudice in potentially losing witnesses because of a stay-induced delay).

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Defendant's motion in its entirety.

---

[20] Penn cites two cases in apparent support of its argument that nonparties and the public benefit from issuing a stay, but neither is apt. Penn Mem. 11 (citing *Weisman*, 1995 WL 273678, at *2 (no mention of the interests of nonparties or the public), and *McLafferty*, 2008 WL 4612856, at *2 (magistrate judge found public interest in favor of stay without detailed analysis, in case where district judge needed to consider antitrust pleading in light of the then-recently decided *Twombly* standard)).

Dated:   New York, New York
         September 23, 2024

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:   */s/ Marc E. Kasowitz*
         Marc E. Kasowitz*
         Daniel R. Benson*
         Mark P. Ressler*
         Andrew L. Schwartz*
         Joshua E. Roberts*
         Jillian R. Roffer*
         New York, New York 10019
         Tel: (212) 506-1700
         mkasowitz@kasowitz.com
         dbenson@kasowitz.com
         mressler@kasowitz.com
         aschwartz@kasowitz.com
         jroberts@kasowitz.com
         jroffer@kasowitz.com

         * Admitted *pro hac vice*

LAW OFFICES OF ERIC A. SHORE, P.C.

         Eric A. Shore (ID: 73807)
         Briana Pearson-Prout (ID: 327007)
         1500 JFK Boulevard
         Suite 1240
         Philadelphia, Pennsylvania 19102
         Tel: (856) 433-6198
         erics@ericshore.com
         brianap@ericshore.com

         *Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel hereby certifies that on September 23, 2024, a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Stay Discovery was filed electronically through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:    September 23, 2024              Respectfully submitted,

                                         */s/ Marc E. Kasowitz*                          
                                         Marc E. Kasowitz