**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EYAL YAKOBY, JORDAN DAVIS,** | : | |
| **NOAH RUBIN and STUDENTS AGAINST** | : | **CIVIL ACTION** |
| **ANTISEMITISM, INC.** | : | |
| | : | |
| **v.** | : | **NO. 23-4789** |
| | : | |
| **THE TRUSTEES OF THE UNIVERSITY OF** | : | |
| **PENNSYLVANIA** | : | |

<u>**MEMORANDUM OPINION**</u>

**Goldberg, J.**                                                                 **June 2, 2025**

Plaintiffs, Jewish students attending the University of Pennsylvania ("Penn"), allege it engaged in antisemitic conduct that warrants a federal lawsuit. Plaintiffs' 111-page amended complaint sets out a wide variety of general allegations, complaints, historical and current events, and alleged antisemitic incidents that allegedly took place not just on Penn's campus, but elsewhere in the United States and the world. The amended complaint also includes sweeping allegations of ideological, philosophical, religious, and political concerns and grievances, that have nothing to do with a federal lawsuit.

It is unclear why Plaintiffs' counsel deemed it necessary to allege so many unrelated facts when doing so is directly contrary to federal pleading requirements. Indeed, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."[1] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-678 (2009).

---
[1]    Rule 8 provides, in relevant part:

**Rule 8.          General Rules of Pleading**

1

Penn has filed a Motion to Dismiss and Strike the Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12. After review of Plaintiffs' amended complaint, I find that it fails to sufficiently allege the facts necessary to plausibly state viable claims under Title VI, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and for breach of contract. Consequently, I will grant Penn's motion. I will, however, provide Plaintiffs one last opportunity to amend its complaint, but only as to the Title VI and breach of contract claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Eyal Yakoby, Jordan Davis, and Noah Rubin are Jewish undergraduate students attending the University of Pennsylvania. All three are members of Students Against Antisemitism ("SAA"), "a not-for-profit corporation organized under the laws of the State of Delaware, formed to defend human and civil rights, including the right of individuals to equal protection and to be free from antisemitism in higher education, through litigation and other means." (Am. Compl., ¶ 19, ECF No. 28).

Viewing their amended complaint as a whole, Plaintiffs essentially allege that since the October 7, 2023 attack on Israel, Penn has permitted, tolerated and/or facilitated multiple antisemitic incidents on its campus that have created a hostile educational environment for Jewish students. Plaintiffs assert that this conduct amounts to violations of Title VI of the Civil Rights

---

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

**(1)**    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

**(2)**    a short and plain statement of the claim showing that the pleader is entitled to relief; and

**(3)**    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Act of 1964, 42 U.S.C. § 2000d, <u>et. seq.</u>, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, <u>et. seq.</u>, and the contracts it has with its students.  Plaintiffs seek injunctive relief, monetary, statutory, and/or actual damages, attorneys' fees, and costs.

## II.    LEGAL STANDARDS

Penn moves to dismiss the amended complaint on several grounds including lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)), failure to plead facts that state viable causes of action (Fed. R. Civ. P. 12(b)(6)), and for dismissal of portions of the amended complaint (Fed. R. Civ. P. 12(f)).

A motion to dismiss pursuant to Rule 12(b)(1) is not to be turned "into an attack on the merits." <u>Davis v. Wells Fargo</u>, 824 F.3d 333, 348 (3d Cir. 2016).  Unlike a Rule 12(b)(6) motion, which is the proper vehicle for the early testing of a plaintiff's claims, a Rule 12(b)(1) motion challenges the existence of a federal court's subject matter jurisdiction, and the burden of persuasion is inverted.  <u>Id.</u> at 349.  When subject matter jurisdiction is challenged, the plaintiff bears the burden of persuading the court that it properly has jurisdiction.  <u>Id.</u> (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).  This differs from a Rule 12(b)(6) motion where the burden falls upon the party challenging the sufficiency of a pleading to show that no claim has been presented.  <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take the form of either a facial or a factual attack.  <u>Davis</u>, 824 F.3d at 346; <u>In re Schering-Plough Corp.</u>, 678 F.3d 235, 243 (3d Cir. 2012).  "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."  <u>Constitution Party of Pennsylvania v. Aichele,</u> 757 F.3d 347, 358 (3d Cir. 2014).  "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint."  <u>Id.</u> When evaluating a facial attack, courts apply the same standard of review used when "considering a

motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." Aichele, 757 F.3d at 358. "In reviewing a facial challenge, which contests the sufficiency of the pleadings, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" Id. (quoting Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).

"A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction." Id. See also, Stouffer v. Union R.R. Co., LLC, 85 F.4th 139, 143 (3rd Cir. 2023) ("When examining subject matter jurisdiction, we may consider facts outside the pleadings."). The defendant can submit proof that jurisdiction is lacking and the trial court is free to weigh the evidence and evaluate for itself the merits of the jurisdictional claims. Aichele, 757 F.3d at 358; Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "In sum, a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." Aichele, 757 F.3d at 358 (internal quotation marks and citation omitted).

The standards which apply to Rule 12(b)(6) motions are more familiar. To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Iqbal, 556 U.S. at 678. Although a complaint "does not need detailed factual allegations," it must contain something "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). And the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference

4

that the defendant is liable for the misconduct alleged." <u>Doe v. Univ. of the Scis.</u>, 961 F.3d 203, 208 (3d Cir. 2020) (citing <u>Iqbal</u>, 556 U.S. at 678). In reviewing a pleading under this rubric, a court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>Rocks v. City of Phila.</u>, 868 F.2d 644, 645 (3d Cir. 1989).

Finally, Fed. R. Civ. P. 12(f) permits the court, on its own or on motion of a party, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." It is the purpose of a Rule 12(f) motion "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." <u>McInerney v. Moyer Lumber & Hardware, Inc.</u>, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Motions to strike are generally not favored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. <u>Id.</u>

## III. DISCUSSION

### A. 12(b)(1)

#### 1. Standing

Penn first seeks dismissal of Plaintiffs' Title VI claims for lack of standing and ripeness pursuant to Rule 12(b)(1). <u>See, e.g.</u>, <u>Aichele</u>, 757 F.3d at 357 and <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir. 2007)) (both holding that only a party with standing can invoke the jurisdiction of the federal courts and thus, a motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1)). Specifically, Penn asserts Plaintiffs' claims should be dismissed because: (1) they are premature and not yet ripe insofar as Penn's response to the antisemitic unrest on its campus is ongoing; (2) Plaintiffs have failed to show it is likely their alleged injury(ies) will be redressed by a favorable decision; and (3) Plaintiff SAA has not made

the requisite showing that the participation of its individual members is not required in order to confer associational standing upon it to sue in place of those members.

It is well-established that the authority of the federal courts under Article III is limited to resolving actual "cases" or "controversies," and that "[t]he doctrine of standing, among others, implements this limit" on that authority.  Dep't of Educ. v. Brown, 600 U.S. 551, 561 (2023) (quoting Carney v. Adams, 592 U.S. 53, 58 (2020)).  The "irreducible constitutional minimum of standing contains three elements that a plaintiff must plead and ultimately prove."  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  "First, the plaintiff must have suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id.  "Second, the plaintiff's injury must be 'fairly traceable to the challenged action of the defendant,' meaning that 'there must be a causal connection between the injury and the conduct complained of.'"  Id.  And "[t]hird, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."  Id.  These same elements must be examined with respect to each individual claim advanced by the aspiring parties and hence a plaintiff who raises multiple causes of action must demonstrate standing for each claim he seeks to press.  Aichele, 757 F.3d at 360 (internal quotation marks and citations omitted).

For an association such as SAA to have standing to bring suit on behalf of its members: (1) its members must otherwise have standing to sue in their own right; (2) the interests which the association seeks to protect must be germane to its organizational purpose; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit.  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977) (citing Warth v. Seldin, 422 U.S. 490, 511 (1975)).

Penn's subject matter jurisdiction challenge may be interpreted as being *both* factual and facial in nature insofar as it argues the amended complaint fails to plead the requisite elements of standing on its face *and* the actual facts of the case do not show Plaintiffs sustained actual injuries that were caused by any conduct by Penn.  By arguing that Plaintiffs' claims are not yet ripe for adjudication, Penn factually contests the court's subject matter jurisdiction, submitting documentary evidence showing it has long had policies in place opposing antisemitism in all its forms on its campus. These documents also allegedly establish that since October 7, Penn has developed action plans to address and "combat" antisemitism and the expression of religious and racial hatred on its campus, and has increased its security measures to ensure the safety and well-being of its Jewish students.  (Def.'s Mot. to Dismiss, Exs. 1 – 25).

In order to state a claim for relief under Title VI, a plaintiff must plead facts that would support an inference of discrimination on the basis of race, color and national origin and must allege he was treated differently from similarly situated persons who are not members of a protected class.  Osei v. La Salle Univ., 493 F. App'x 292, 296 (3d Cir. Aug. 20, 2012).  To state and maintain a cause of action for breach of contract under Pennsylvania law, a plaintiff must sufficiently allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).  And to state a cause of action under the Unfair Trade Practices and Consumer Protection Law, "a plaintiff must allege common-law fraud: (1) a misrepresentation, which is (2) material to the transaction, (3) made falsely (4) with the intent of misleading another to rely on it causing (5) justifiable reliance and (6) injury proximately caused by the reliance." Brock v. Thomas, 782 F. Supp.2d 133, 143 (E.D. Pa. 2011) (internal citation omitted).

Annexed to the Plaintiffs' response in opposition to Penn's motion are Declarations from Plaintiffs Yakoby and Davis attesting to incidents of antisemitism which they experienced personally and to the fact that the antisemitic campus hostilities are ongoing. (Pls.' Mem. of Law in Opp. to Def.'s Mot. to Dismiss). Although it is difficult to parse through the 312 paragraphs of allegations contained in the Amended Complaint, I find Plaintiffs have alleged various incidents where they were personally subjected to derogatory language, verbally harassed, and/or targeted because they were Jewish. Because of these incidents, the numerous protests, and the Palestine Writes Festival, Plaintiffs assert they have been forced to miss classes and other campus activities and experiences, have felt threatened and/or unsafe in their residences, classrooms, and other places on campus, have felt as though they needed to refrain from wearing certain articles of clothing or jewelry or refrain from speaking out on matters of importance to them, and/or have otherwise felt as though they had to hide or obscure their Jewish identities. (Am. Compl., ¶¶ 109-110, 112). As a result, Plaintiffs aver they have lost educational and extracurricular opportunities and lost the value of the tuition and fees paid to Penn. (Am. Compl., ¶ 310).

Plaintiffs also point to some seven Penn policies which they allege can be viewed as giving rise to contractual obligations on the part of the University and on which they purportedly relied in deciding to attend Penn. These facts, read in the light most favorable to Plaintiffs, are enough to make out injury in fact that is "fairly traceable" to the defendant's "challenged actions." These allegations and submissions raise material factual questions which cannot be resolved at this time given the current posture of this case without conducting a plenary trial[2], and are enough to

---

[3]    See, Schuchardt v. President of the United States, 839 F.3d 336, 343 (3d Cir. 2016) (holding if defendant contests pleaded jurisdictional facts, the court must permit plaintiff to respond with evidence supporting jurisdiction but "if there is a dispute of material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination"); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993) (holding that the party "asserting

overcome (at least for now) Penn's Rule 12(b)(1) factual and facial jurisdictional challenge to Plaintiffs' standing.  See also, Potter v. Cozen & O'Connor, 46 F.4th 148, 154 (3d Cir. 2022); Hassan v. City of New York, 804 F.3d 277, 289 (3d Cir. 2015).  Accordingly, I find the individual Plaintiffs possess the requisite Article III standing to pursue their Title VI, UTPCPL, and breach of contract claims.

I reach the same conclusion with regard to Students Against Antisemitism.  Again, to have associational standing, the individual members must have standing in their own right, the interest asserted must be germane to the organization's purpose, and neither the claim nor the relief requested must require the participation of the individual members in the lawsuit.  Curto v. A Country Place Condominium Assoc., Inc.  921 F. 405, 410, n. 2 (3d Cir. 2019).

The Amended Complaint in this case avers that SAA is "a not-for-profit corporation organized under the laws of the State of Delaware, formed to defend human and civil rights, including the right of individuals to equal protection and to be free from antisemitism in higher education, through litigation and other means."  (Am. Compl., ¶ 19).  In paragraphs 87 – 91, it is alleged that "SAA Member #1, a Modern Middle East Studies major" was "targeted" by Professor Ahmad Almallah, a lecturer in the English Department, "for her opinion on his antisemitic tirades and pitted her against other students in the class," and that on one occasion when SAA Member #1 opined that she was grateful for the Israeli-West Bank Wall because it saved lives, she was harassed for thirty minutes by Professor Almallah and other students.  (Id., ¶¶ 87, 89).  Professor

---

jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").  Given the amount of time and effort that would be necessary to conduct a plenary trial on this lone issue, I do not find that doing so is in the best interests of judicial economy in this case.

Abdulrahman Atta, a professor teaching Elementary Arabic I and Professor Huda Fakhreddine are alleged to have required their students, including Jewish members of SAA, to attend the Palestine Writes Literature event, and to have punished those who did not attend.  (Am. Compl., ¶¶ 117, 125).

While the Amended Complaint does not contain any other details about SAA, or the necessity for its individual members' participation in this suit, in light of its described purpose "to defend human and civil rights, including the right to be free from antisemitism in higher education," and given that it is alleged that several of its individual members have faced antisemitism,  I find that associational standing has also been adequately pled.  After all, "[w]hen facing a motion to dismiss, an association plaintiff 'need only make a plausible allegation of facts establishing each element of standing.'"  National Council of Nonprofits v. Office of Management and Budget, Civ. No. 25-239, 2025 WL368852 at * 3 (D.D.C. Feb. 3, 2025) (quoting Cutler v. U.S Dep't of Health & Hum. Servs., 797 F.3d 1173, 1179 (D.C. Cir. 2015)).

Given all of the above, Penn's motion to dismiss premised upon Rule 12(b)(1) is denied, and questions as to whether all the Plaintiffs have pled plausible claims under Title VII, the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for breach of contract will now be considered under Rule 12(b)(6).

B.    12(b)(6)

2.    Title VI

Under Title VI, 42 U.S.C. § 2000d, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Although Title VI does not, on its face, "address discrimination on the basis of

religion . . . there is ample precedent classifying antisemitic harassment and discrimination as tantamount to racial discrimination." Landau v. The Corporation of Haverford College, Civ. No. 24-2044, 2025 U.S. Dist. LEXIS 1402 at *8 (E.D. Pa. Jan. 6, 2025) (citing Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617-618 (1987), (finding error in Court of Appeals' holding that "Jews cannot state a § 1982 claim against other white defendants"), and T.E. v. Pine Bush Central School Dist., 58 F. Supp. 3d 332, 354-355 (S.D.N.Y. 2014)) (holding that "regardless of whether they assert their claims on 'national origin' or 'race,' Plaintiffs are within their rights to assert a claim under Title VI based on anti-Semitic discrimination."). See also, CBOCS West, Inc. v. Humphries, 553 U.S. 442, 456 (2008) (noting that "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination," and that the Supreme Court has "accepted overlap between a number of civil rights statutes"); Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subject to intentional discrimination solely because of their ancestry or ethnic characteristics."); King v. Township of E. Lampeter, 17 F. Supp. 2d 394, 417 (E.D. Pa. 1998) ("The Supreme Court has held that Jews are a distinct race for civil rights purposes."). While not binding, I find this authority to be well-reasoned and persuasive, and therefore I also hold that Plaintiffs may invoke Title VI as a basis for this lawsuit against Penn.

By its terms, Title VI prohibits intentional discrimination based on race in any program that receives federal funding. Bridges v. Scranton School District, 644 F. App'x 172, 179 (3d Cir. March 16, 2016) (internal citation omitted). Hence, the two threshold elements for establishing a cause of action pursuant to Title VI are "(1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." Pocono

Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 908 F. Supp. 2d 597, 615 (M.D. Pa. 2012). Assuming that threshold has been established, to make out a claim under Title VI, a plaintiff must then show he or she (1) was a member of a protected class, (2) was qualified for the benefit or program at issue, but (3) suffered an adverse action, (4) under circumstances giving rise to an inference of discrimination. David v. Neumann Univ., 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016).

Further, because Title VI prohibits only intentional discrimination, it is incumbent upon a plaintiff to allege facts demonstrating that a defendant intended to discriminate against him. Alexander v. Sandoval, 532 U.S. 275, 280 (2001).  This may be accomplished by showing evidence demonstrating either discriminatory animus or deliberate indifference. David, 187 F. Supp. 3d at 561.

Suits for money damages for a failure to address a racially hostile environment are also actionable under Title VI. Bridges, 644 F. App'x at 179.  "In order to establish liability based on a hostile environment for students under Title VI, a plaintiff must demonstrate 'severe or pervasive' harassment based on the student's race, . . . and 'deliberate indifference to known acts of harassment.'" L.L. v. Evesham Twp. Bd. of Educ., 710 F. App'x 545, 549 (3d Cir. Sept. 27, 2017) (quoting Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999) and Castelberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017)) (emphasis in original).  Finally, a Title VI violation may be established through the deliberate indifference standard by showing that an educational institution had knowledge that a federally protected right is substantially likely to be violated, but nevertheless failed to act despite that knowledge.  Canaan v. Carnegie Mellon Univ., Civ. No. 23-2107, 2024 U.S. Dist. LEXIS 227575 at *21 (W.D. Pa. Dec. 17, 2024) (citing S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 265 (3d Cir. 2013)).

Turning to the allegations in the case before me, Plaintiffs aver at paragraphs 22 and 278 of the Amended Complaint that Penn is a private university which receives financial assistance and federal funding from the United States Department of Education and is therefore subject to Title VI.  Plaintiffs claim that through its "acts and omissions," Penn and its administrators intentionally discriminated and harassed them "on the basis of their actual and/or perceived Jewish and/or Israeli ancestry, race, ethnic characteristics, or national origin," and forced them to endure a hostile environment.  (Am. Compl. ¶¶ 281 – 284).

But while Plaintiffs spend an inordinate amount of space expounding on long-past injustices and incidents, some dating as far back as 1993, and complaining that Penn did not take the actions or respond to their reports, letters, or emails in the manner which Plaintiffs wanted, Plaintiffs have failed to plead any *facts* showing either intentional discrimination or deliberate indifference on the part of *Penn*.  See Am. Compl. ¶ 249.  Indeed, I could find no allegations that Penn or its administration has itself taken any actions or positions which. even when read in the most favorable light, could be interpreted as antisemitic with the intention of causing harm to the Plaintiffs.  At worst, Plaintiffs accuse Penn of tolerating and permitting the expression of viewpoints which differ from their own.  And the Amended Complaint acknowledges that Penn *has* responded to the antisemitic incidents and expressions of antisemitism on its campus and has made efforts to redress these problems.[3]

Deliberate indifference is a very high bar and Plaintiffs' dissatisfaction with Penn's responses is not enough to establish there was an official decision by Penn to not remedy a Title

---

[3]    For example, among other things, Plaintiffs acknowledge that Penn has formulated and announced an "Action Plan to Combat Antisemitism" (Am. Compl. ¶ 195, created a Student Advisory Group and Task Force intended to address campus antisemitism, and formed a Presidential Commission on Countering Hate and Building Community  (Id., ¶¶ 196-199, 235).

VI violation *and* that this deliberate indifference effectively caused racial discrimination. (emphasis added).  Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 642 (1999).  As Plaintiffs have not succeeded in alleging the necessary facts entitling them to relief under Title VI, Count I shall be dismissed.

Plaintiffs also seek injunctive relief on their Title VI claim.[4]  To obtain injunctive relief, the Plaintiffs must allege facts which would establish: (1) that they have or are in immediate danger of suffering an irreparable injury; (2) which cannot be adequately remedied or compensated by available legal remedies (such as monetary damages); (3) that after considering the balance of hardships between the Plaintiff and the Defendant, an injunction is warranted; and (4) that the entry of an injunction would not disserve the public interest.  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-157 (2010); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  But as noted above, the Amended Complaint seeks compensation for alleged injuries in the form of money damages which are of course available under Title VI.  Thus, Plaintiffs' harms are indeed redressable through other, available legal remedies, and their claim for injunctive relief shall also be dismissed.

     3.     *Breach of Contract*

---

[4]    Specifically, Plaintiffs claim to be:

> . . . entitled to appropriate injunctive relief under Title VI, as Penn has knowledge of, and has been and continues to be deliberately indifferent to, a hostile environment that is severe, persistent, and pervasive; there is no adequate remedy at law to prevent Penn from continuing to discriminate against its students on the basis of Jewish and/or Israeli ancestry, race, ethnic characteristics, or national origin in violation of Title VI; and the harm plaintiffs will otherwise continue to suffer is irreparable.

(Am. Compl., ¶ 292).

Penn next moves for the dismissal of Count II of the Amended Complaint, which purports to state a cause of action for breach of contract.

Pennsylvania law holds that "the relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract." Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). "The contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of his or her enrollment in the institution." Id. A student handbook is one such document upon which a claim for breach of contract may be based, as is a school's anti-harassment policy provided that the requirements for an enforceable contract are satisfied. See, e.g., David v. Neuman Univ., 187 F. Supp. 3d at 559 ("A school's anti-harassment policy may fall under one or more of the categories of documents that can create a contract between a student and a school if the requirements for an enforceable contract are otherwise met.") (internal quotation marks and citation omitted), and Reardan v. Allegheny College, 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (holding college's disciplinary procedures contained within a portion of student handbook should be reviewed "as would any other agreement between two private parties.").

Again, "[t]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." McCabe v. Marywood Univ., 166 A.3d 1257, 1262 (Pa. Super. Ct. 2016) (quoting, inter alia, Meyer, Darragh, Buckler, Bebeneck & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)). "Like all other contracts, the terms of the agreement must be 'sufficiently definite to be enforced.'" David, 187 F. Supp. 3d at 559 (quoting,

*inter alia*, <u>Reynolds v. Univ. of Pennsylvania</u>, 747 F. Supp. 2d 522, 542 (E.D. Pa. 2010)) ("A contract is enforceable where: (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was consideration."). Thus, "[t]o adequately allege breach of contract against an educational institution, a student must allege the nonperformance of a *specific contractual promise* and not a generalized failure to meet a student's expectations." <u>Canaan v. Carnegie Mellon</u>, 2024 U.S. Dist. LEXIS at *53 - *54 (citing <u>Cavaliere v. Duff's Bus. Inst.</u>, 605 A.2d 387, 404 (Pa. Super. Ct. 1992) (emphasis in original).

Plaintiffs assert that "at least seven" of Penn's issued "policies designed and intended to protect students from discrimination, harassment, and intimidation," give rise to "an express contractual relationship between Penn and the individual Plaintiffs and SAA's Jewish and/or Israeli members by virtue of their enrollment at Penn . . . " (Am. Compl., ¶¶ 38, 295). These are: (1) the Code of Student Conduct, (2) Guidelines on Open Expression, (3) Nondiscrimination Statement, (4) Charter of the Student Disciplinary System, (5) Principles of Responsible Conduct, (6) Equal Opportunity and Affirmative Action Policy, and (7) Faculty Handbook. <u>Id</u>.

In paragraphs 41 – 57 of their Amended Complaint, Plaintiffs describe the foregoing policies in terms of their sharing of the University's common mission to provide a world class education to its diverse student body through, *inter alia*, the promulgation and enforcement of policies of non-discrimination, freedom of thought, inquiry, speech and lawful assembly, respect and tolerance for others and the law. Plaintiffs go on to allege that Penn breached its agreements by failing to comply with those policies.

Reading the Amended Complaint as a whole and in the most favorable light to the Plaintiffs, there is no foundation upon which a finding could be made that the foregoing policies

constituted a promise or guarantee by Penn that everyone within its ambit and its community would adhere to those stated policies or that its mission would be achieved. Instead, Plaintiffs allege only that "[t]hrough the documents and materials it publishes and provides to students, Penn makes contractual commitments to its students concerning bias-related abuse, harassment, intimidation, and discrimination." (Am. Compl., ¶ 295). In the absence of an alleged failure by Penn to perform a specific contractual *promise*, I cannot find that the alleged agreements' terms are sufficiently definite or enforceable, or that there was a manifestation by the parties that they intended to be bound by the agreement. See, e.g., Vurimindi v. Fuqua Sch. of Bus., 435 F. App'x 129, 133-134 (3d Cir. 2011) (finding no error in District Court's dismissal of Plaintiff's breach of contract claim premised on University guidelines and policies where Plaintiff failed to cite to any promises made by University regarding how he would be received by other students or professors); Swartley v. Hoffner, 734 A.2d 915 (Pa. Super. Ct. 1999) (affirming entry of summary judgment in favor of Defendant university because Plaintiff professor failed to point to any provision in written contract between it and its students setting forth doctoral committee members' obligations or to otherwise show a link between Plaintiff's allegations to the contractual relationship between the university and its students). Even read in a favorable light, Count II of the Amended Complaint alleges nothing more than a generalized failure to meet its students' expectations, and will therefore be dismissed.

       3.     *Unfair Trade Practices and Consumer Protection Law*

In Count III of their Amended Complaint, Plaintiffs seek monetary damages and injunctive relief under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq.* ("UTPCPL") for the "loss of the value of the tuition and fees they have paid Penn, loss

of educational and extracurricular opportunities, economic injures, and other direct and consequential damages." (Am. Compl., ¶ 310).

The underlying foundation of the UTPCPL is fraud prevention and the eradication of, "among other things, 'unfair or deceptive' business practices." Commonwealth by Creamer v. Monumental Properties, Inc., 329 A.2d 812, 816 (Pa. 1974). "An act or practice is deceptive or unfair if it has the capacity or tendency to deceive." Commonwealth v. Peoples Benefit Servs., 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007) (internal quotation marks and citation omitted). "Neither the intention to deceive nor actual deception must be proved; rather it need only be shown that the acts and practices are capable of being interpreted in a misleading way[;] the test for the court is to determine the overall impression arising from the totality of what is said, as well as what is reasonably implied, in the advertisement or solicitation." Id.

Further, the UTPCPL "includes a private-plaintiff standing provision which 'creates a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed, and who, *as a result*, sustain an ascertainable loss.'" Smith v. State Farm Mut. Auto. Ins. Co.. 506 F. App'x 133,137 (3d Cir. Nov. 27, 2012) (quoting Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008) (emphasis in original). Justifiable reliance is an integral component of a Consumer Protection Law claim, just as it is in a common law fraud claim. Toy v. Metro. Life Ins. Co., 928 A.2d 186, 202-203 (Pa. 2007); Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 439 (Pa. 2004). To bring a cognizable UTPCPL claim, a plaintiff must show the defendant engaged in an activity proscribed under the law, that the plaintiff justifiably relied on the defendant's wrongful conduct or representation, and suffered harm as a result of that reliance. Yocca, 854 A.2d at 438; Loduca v. WellPet LLC, 549 F. Supp. 3d 391, 400 (E.D. Pa. 2021) (internal quotation marks and citations omitted).

In Count III, Plaintiffs allege that Penn "offered for sale to the public educational goods and services," which were purchased by Plaintiffs Rubin and Davis "for personal purposes, . . . by accepting admission to and enrolling at Penn, and paying tuition to Penn, to pursue an education." (Am. Compl., ¶ ¶ 303-304).  According to Plaintiffs, Penn's "statements against discrimination, abuse, safety, and harassment are made in connection with the sale of its educational goods and services," are "aimed at consumers of its goods and services for personal purposes (namely current and prospective students), and "are likely to mislead a reasonable prospective or current student acting reasonably under the circumstances."  (Id., ¶ 305).  By not acting "in accordance with" and not "follow[ing] through on, its statements," Penn falsely represented "the quality and standards of [its] educational goods and services with intent not to sell them as advertised, and engaged in fraudulent and deceptive conduct which created a likelihood of confusion and misunderstanding in violation of the UTPCPL."  (Id., ¶s 305, 308-310).  Finally, it is alleged that Plaintiffs Rubin and Davis "saw, heard and were aware of Penn's unfair, deceptive and misleading acts, statements . . . , and representations" before and after they enrolled at Penn, and "reasonably relied" on them in enrolling at Penn and paying tuition and fees to Penn thereby injuring them.  (Id., ¶¶ 306-310).

These averments fail to plead a viable cause of action under the UTPCPL.  Examining the alleged representations made by Penn in the various policies, procedures, guidelines, code and/or handbooks identified in the Amended Complaint in totality, they are clearly nothing more than general statements regarding Penn's educational philosophy and mission.  On their face and giving them a plain reading, they are decidedly not confusing, deceptive, or misleading, and it is inconceivable how they could be so interpreted or viewed as giving rise to a contractual obligation to prevent antisemitic language, acts, or incidents from occurring on Penn's campus.  Hence, any reliance by Plaintiffs on such an interpretation is inherently unreasonable and unjustifiable.

Additionally, if as alleged, Plaintiffs Rubin and Davis saw and were aware of Penn's unfair, deceptive, and misleading acts, statements, and representations before they enrolled, their reliance would clearly not have been reasonable. The UTPCPL claim fails and dismissal of Count III is likewise proper.

## IV.    CONCLUSION

For the reasons outlined, Plaintiffs' Amended Complaint is dismissed for failure to plead claims on which relief can be granted under Title VI, breach of contract, and the UTPCPL. However, a district court must provide a plaintiff with an opportunity to make a curative amendment even if the plaintiff does not seek leave to do so unless such amendment would be inequitable or futile. Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008). I find that amendment of Count III would be futile as the facts which Plaintiffs have put forward simply cannot sustain a claim under the UTPCPL. I cannot, however, definitively make that determination with respect to Counts I and II. Because it appears that the deficiencies noted in those counts could potentially be resolved through the filing of a Second Amended Complaint, leave to amend the Title VI and breach of contract claims shall be granted.

However, and as has been repeatedly observed throughout this Opinion, many of the more than 300 paragraphs in the Amended Complaint contain language which is unnecessarily inflammatory and "impertinent," and immaterial allegations that have virtually nothing to do with the claims which Plaintiffs are endeavoring to raise. Filing of yet another complaint would be Plaintiffs' third bite at the apple. Plaintiffs are cautioned that if they choose to file a third complaint, the additional allegations must be alleged in good faith and in compliance with Rules 8(a) and 11.

An appropriate Order follows.

20